In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2487

SANDRA REMER,

Plaintiff-Appellant,

v.

BURLINGTON AREA SCHOOL DISTRICT,
LARRY ANDERSON, WILLIAM C. CAMPBELL,
et al.,

Defendants-Appellees.


Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99 C 209--J.P. Stadtmueller, Chief Judge.


Argued November 1, 1999--Decided March 6, 2000


    Before EASTERBROOK, RIPPLE and DIANE P. WOOD, Circuit
Judges.

    RIPPLE, Circuit Judge.  Sandra Remer appeals the
dismissal of her sec. 1983 lawsuit against the
Burlington Area School District (the "School
District" or the "District") and the individual
members of the District's school board. The
district court dismissed Ms. Remer's lawsuit on
the ground that the Rooker-Feldman doctrine
precluded federal jurisdiction over the case.
After the court entered its judgment, Ms. Remer
filed with this court a petition for an
interlocutory appeal, see 28 U.S.C. sec. 1292; a
panel of this court denied her petition. Ms.
Remer then filed a notice of appeal that
indicated that she was appealing the same
district court ruling as a final order. See 28
U.S.C. sec. 1291. This second filing, however,
came over a month and a half after the date for
filing a timely notice of appeal.

    We first must resolve two jurisdictional
questions. Given the irregularities in Ms.
Remer's notice of appeal, we must address whether
we have appellate jurisdiction over this case. We
also must decide whether the district court was
correct in holding that the Rooker-Feldman
doctrine blocks federal jurisdiction over Ms.
Remer's lawsuit. The School District urges, in

the alternative, that we affirm the district court's dismissal on the ground that Ms. Remer's federal action is barred by the doctrine of claim preclusion.

As we explain more fully in the following opinion, we conclude that we do have jurisdiction over this appeal and that, on this record, the Rooker-Feldman doctrine is not an appropriate basis for dismissal. Moreover, we hold that claim preclusion does not apply to Ms. Remer's federal claims.

I

BACKGROUND

A.  Facts

In November 1998, Sandra Remer's tenth-grade son, M.R., and four other Burlington High School students hatched a plot to bring several guns to school and then to shoot certain administrators and students. Acting on information from a confidential informant, Burlington police officers were able to foil the plot two days before the planned siege. The day after the informant revealed the plot, police officers briefed Burlington High's principal and assistant principal, and, based on the information provided by the police, the school administrators decided to suspend M.R. from school for five days for his role in the planned attack.

In the days after word of the plot surfaced, the five students were the subjects of both police and school investigations. Ms. Remer hired attorney Terrence Rose to represent M.R. through these investigations. After Ms. Remer retained Rose, Burlington High's assistant principal contacted Ms. Remer by letter to inform her that M.R.'s suspension would be extended pending the outcome of an expulsion hearing before the District's school board. Responsibility for arranging the expulsion hearing later passed to the District's superintendent, Ron Jandura. On November 24, Superintendent Jandura sent a letter to Ms. Remer informing her that the expulsion hearing had been scheduled for December 1.

Meanwhile, as Burlington High's administration set the expulsion process in motion, the School District's attorneys filed a civil complaint against M.R. in the Circuit Court of Racine County. In its complaint, the District sought to obtain a declaratory judgment as well as a temporary restraining order and an injunction that would prevent M.R. from contacting the School District or coming within 200 yards of any District property "for as long as [M.R. is]

suspended and for the length of any future expulsion." R.8, Ex.I. The circuit court granted the temporary restraining order, and the hearing date for the injunction request was set for November 30. When it later became impossible for the court to hold the hearing on November 30, M.R., through attorney Rose, agreed to extend the temporary restraining order until the circuit court could conduct the injunction hearing.

On December 1, the District's school board, which consisted of the named individual defendants/1 in the present lawsuit, held the expulsion hearing for M.R. The Remers and Rose did not attend the hearing. The school board voted to expel M.R. until 2003, the year M.R. will turn 21 years old; the practical effect of expelling M.R. until age 21 is that M.R. can never again be a student at Burlington High. The Remers learned of the school board's decision by letter. According to the expulsion order, M.R. was expelled from the District's schools until April 2003 and was ordered not to enter District property during the period of his expulsion.

In January 1999, Ms. Remer retained another attorney, Willie J. Nunnery, to represent her and her son. Mr. Nunnery sent a letter to Superintendent Jandura that requested the school board reconsider its decision to expel M.R. The school board denied Mr. Nunnery's request. Then, in February, M.R. and his mother, acting through their first attorney, Terrence Rose, stipulated to an injunction in the state circuit court. (The circuit court had not yet held a hearing on the School District's injunction request.) The terms of this stipulated injunction were as follows: "[M.R.] shall be enjoined from calling the Burlington Area School District or any of its facilities, until [M.R.] attains the age of 21," and "[M.R.] shall be enjoined from going on the property of any Burlington Area School District facility, including Burlington High School . . . until [M.R.] attains the age of 21." R.8, Ex.R.

Ms. Remer subsequently filed the present sec. 1983 lawsuit in the district court. In her complaint, Ms. Remer alleged that the District and the individual members of the school board had deprived M.R. of due process of law in their handling of M.R.'s expulsion. Ms. Remer's complaint sought compensatory and punitive damages, injunctive and declaratory relief, and M.R.'s reinstatement into Burlington High School.

B.  Decision of the District Court

Shortly after Ms. Remer filed this lawsuit, the district court held a hearing on Ms. Remer's

request for a temporary restraining order. During this hearing, the court raised, sua sponte, the possibility that the Rooker-Feldman doctrine precluded federal jurisdiction over the case. After the parties had an opportunity to address the court's concerns, the district court dismissed the lawsuit in a written order.

The district court's order held that the stipulated injunction entered by the state circuit court amounted to a "de facto" expulsion of M.R. The court reasoned that a ruling on the merits of Ms. Remer's federal lawsuit would be a judgment on the validity of the stipulated injunction. Thus, the district court dismissed the action on the ground that it lacked subject matter jurisdiction. The district court also appeared to dismiss the action on the ground of claim preclusion.

C.  Post-Judgment Proceedings

The district court entered its order dismissing the case on March 30, 1999. On April 12, Ms. Remer, citing 28 U.S.C. sec. 1292, filed with this court a petition for an interlocutory appeal. A panel of this court denied Ms. Remer's petition on May 27, 1999. The panel's one-page order stated that, if she was inclined to do so, Ms. Remer could "appeal as of right from the district court's final order." R.30, Ex.A. On June 7, Ms. Remer filed in the district court a notice of appeal that indicated she was appealing the district court's order dated March 30, 1999.

II
DISCUSSION

A.  Notice of Appeal

1.

Compliance with the notice of appeal requirements of Rule 3 of the Federal Rules of Appellate Procedure is a prerequisite to appellate review. See Smith v. Barry, 502 U.S. 244, 248 (1992); AlliedSignal, Inc. v. B.F. Goodrich Co., 183 F.3d 568, 571 (7th Cir. 1999); Badger Pharmacal, Inc. v. Colgate-Palmolive Co., 1 F.3d 621, 624 (7th Cir. 1993). Rule 3 states that "[a]n appeal permitted by law as of right from a district court to a court of appeals may be taken only by filing a notice of appeal with the district clerk within the time allowed by Rule 4." Fed. R. App. P. 3(a)(1). The rule allows appellants some leeway in that, other than the timeliness of the filing, an appellant's failure to comply strictly with the rule's provisions will not automatically doom an appeal. See Fed. R. App. P. 3(a)(2). In contrast, however, the

timely filing of a notice of appeal is both "mandatory and jurisdictional," and a notice filed too late will preclude appellate jurisdiction. Browder v. Director, Dep't of Corrections, 434 U.S. 257, 264 (1978).

Ms. Remer had 30 days from the date the district court entered its judgment to file a timely notice of appeal. See Fed. R. Civ. P. 4(a)(1)(A) & (B). Although Ms. Remer has indicated her desire to appeal the district court's order dated March 30, 1999, she filed her "notice of appeal" in the district court on June 7, 1999, unquestionably after the 30 days allowed by the federal rules. Even so, Ms. Remer filed her petition for an interlocutory appeal under sec. 1292 on April 12, 1999, which was well within 30 days of the district court's March 30 order. Thus, we must decide whether Ms. Remer's petition to this court for an interlocutory appeal under sec. 1292 suffices as a notice of appeal under Rule 3.

According to Rule 3, a proper notice of appeal (1) specifies the party or parties taking the appeal, (2) designates the judgment, order or part thereof appealed from, and (3) names the court to which the appeal is taken. See Fed. R. App. P. 3(c)(1). The Supreme Court has instructed that Rule 3's requirements should be construed "liberally." Smith, 502 U.S. at 248. "Thus, when papers are 'technically at variance with the letter of Rule 3, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires.'" Id. (quoting Torres v. Oakland Scavenger Co., 487 U.S. 312, 316-17 (1988)). The Court also has cautioned that noncompliance with Rule 3 is "fatal to an appeal." Id.

2.

We believe that Ms. Remer's petition for an interlocutory appeal was the "functional equivalent" of what Rule 3 requires for a proper notice of appeal. We find support for our conclusion in decisions of our sister circuits, in which those courts have construed similarly erroneous filings to be notices of appeal. See, e.g., In re Bertoli, 812 F.2d 136, 138 (3d Cir. 1987) (holding that a "Notice of Motion for the Certification of An Interlocutory Appeal Pursuant to 28 U.S.C. sec. 1292(b)" complied with Rule 3(c) and was, therefore, effective as a notice of appeal); San Diego Comm. Against Registration and the Draft (CARD) v. Governing Bd. of Grossmont Union High Sch. Dist., 790 F.2d 1471, 1474 (9th Cir. 1986) (construing a motion for permission to take an interlocutory appeal under Fed. R. App.

P. 5 as a notice of appeal), abrogated on other grounds by Planned Parenthood of S. Nevada, Inc. v. Clark County Sch. Dist., 887 F.2d 935 (9th Cir. 1989); Cobb v. Lewis, 488 F.2d 41, 45-46 (5th Cir. 1974) (treating a "Petition for leave to appeal under 28 U.S.C. sec. 1292(b)" as a notice of appeal because the document essentially met Rule 3's standards), overruled on other grounds by Kotam Elecs., Inc. v. JBL Consumer Prods., Inc., 93 F.3d 724 (11th Cir. 1996) (en banc). In these cases, the courts construed the appellant's mistaken filing as a notice of appeal and then proceeded to consider the merits of the appeal. See Bertoli, 812 F.2d at 138; San Diego Comm., 790 F.2d at 1474; Cobb, 488 F.2d at 46.

We are faced with a slightly different situation in our case because a panel of this court denied Ms. Remer's petition for an interlocutory appeal instead of construing her filing as a notice of appeal and then proceeding to the merits of the appeal. We do not think this is a material difference, however, and we can discern no principled reason for us to treat Ms. Remer's April 12 filing as anything other than a timely notice of appeal. Ms. Remer's petition for an interlocutory appeal contained all of the essential elements of a proper notice of appeal: She identified herself as the party seeking an appeal to the Court of Appeals for the Seventh Circuit, and she identified the March 30 order from the district court as the judgment from which she was appealing. No one, including the School District, could have been left wondering who was appealing, what she was appealing, or to which court she was appealing. Furthermore, Ms. Remer's petition was filed 13 days after the district court entered its final judgment--well within Rule 4's 30-day requirement. "If a document filed within the time specified by Rule 4 gives the notice required by Rule 3, it is effective as a notice of appeal." Smith, 502 U.S. at 248-49. Finally, although Ms. Remer filed her petition for an interlocutory appeal with the clerk of this court, and not the clerk of the district court, Rule 4(d) states that a notice of appeal filed with a clerk of the court of appeals shall be transmitted to the district court and "considered filed" in that court on the date it was filed with the clerk of the court of appeals. Fed. R. App. P. 4(d). Thus, we hold that Ms. Remer's petition for an interlocutory appeal was sufficient to be a notice of appeal in this case, and we therefore have jurisdiction.

B. Rooker-Feldman Doctrine

1.

The district court concluded that the Rooker-

Feldman doctrine deprived it of subject matter jurisdiction over this case. Our review of the district court's dismissal is de novo. See Long v. Shorebank Dev. Corp., 182 F.3d 548, 554 (7th Cir. 1999). When a court dismisses an action for lack of subject matter jurisdiction, that court must accept as true all well-pleaded factual allegations and must draw all reasonable inferences in favor of the plaintiff. See id. at 554. At the same time, when "evidence pertinent to subject matter jurisdiction has been submitted, . . . the [ ] court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists." Sapperstein v. Hager, 188 F.3d 852, 855 (7th Cir. 1999) (quoting United Transp. Union v. Gateway W. Ry. Co., 78 F.3d 1208, 1210 (7th Cir. 1996) (internal citations and quotation marks omitted)); see also Long, 182 F.3d at 554; Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n, 149 F.3d 679, 685 (7th Cir. 1998).

2.

The Rooker-Feldman doctrine derives its name from two decisions of the Supreme Court, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). This doctrine essentially precludes lower federal court jurisdiction over claims seeking review of state court judgments or over claims "inextricably intertwined" with state court determinations. E.g., Long, 182 F.3d at 554 (citing Rooker, 263 U.S. at 415-16, and Feldman, 460 U.S. at 482 n.16).

In its most straight-forward presentment, the Rooker-Feldman doctrine bars federal jurisdiction when the federal plaintiff alleges that her injury was caused by a state court judgment. See, e.g., Long, 182 F.3d at 554; Centres, Inc. v. Town of Brookfield, 148 F.3d 699, 702 (7th Cir. 1998); Garry v. Geils, 82 F.3d 1362, 1365-66 (7th Cir. 1996). The Rooker-Feldman doctrine precludes federal jurisdiction over these claims because, no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment. See Rooker, 263 U.S. at 415-16; Long, 182 F.3d at 554; Centres, Inc., 148 F.3d at 702.

The Rooker-Feldman doctrine, however, is not limited to just those claims alleging that the state court judgment itself caused the federal plaintiff's injury; the doctrine also precludes federal jurisdiction over claims "inextricably intertwined" with a state court determination. E.g., Feldman, 460 U.S. at 483-84 n.16; Long, 182

F.3d at 554; Centres, Inc., 148 F.3d at 702. The doctrine precludes jurisdiction over "inextricably intertwined" claims even when those claims were never argued in the state court. See Levin v. Attorney Registration & Disciplinary Comm'n, 74 F.3d 763, 766 (7th Cir.), cert. denied, 518 U.S. 1020 (1996); Ritter v. Ross, 992 F.2d 750, 753 (7th Cir. 1993), cert. denied, 510 U.S. 1046 (1994). As we have noted in previous cases, it can be difficult to discern which claims are and which claims are not "inextricably intertwined" with a state judgment. See Centres, Inc., 148 F.3d at 702; Ritter, 992 F.2d at 754. Ultimately, we must remember that "the crucial point is whether 'the district court is in essence being called upon to review the state-court decision.'" Ritter, 992 F.2d at 754 (quoting Feldman, 460 U.S. at 483-84 n.16). "The pivotal inquiry is 'whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim.'" Long, 182 F.3d at 555 (quoting Kamilewicz v. Bank of Boston Corp., 92 F.3d 506, 510 (7th Cir. 1996), cert. denied, 520 U.S. 1204 (1997)).

3.

In her complaint, Ms. Remer does not attack directly the stipulated injunction entered by the state circuit court; indeed, the complaint does not even mention the injunction. Rather, Ms. Remer has brought this sec. 1983 lawsuit against the School District and its school board members, and she alleges that the defendants violated her son's due process rights in their handling of M.R.'s expulsion. Our inquiry cannot end here, however. "A plaintiff may not circumvent the effect of the Rooker-Feldman doctrine simply by casting [her] complaint in the form of a federal civil rights action." Maple Lanes, Inc. v. Messer, 186 F.3d 823, 825 (7th Cir. 1999), cert. denied, 120 S. Ct. 939 (2000); see also Ritter, 992 F.2d at 754. Thus, we must look beyond the four corners of Ms. Remer's complaint to discover whether the Rooker-Feldman doctrine applies in this case.

The School District argues that Ms. Remer's sec. 1983 lawsuit is barred by the Rooker-Feldman doctrine because her claim is "inextricably intertwined" with the state court injunction. According to the School District, Ms. Remer's lawsuit is "inextricably intertwined" because, in the face of a valid state court injunction barring M.R.'s presence on School District property, Ms. Remer seeks to have her son reinstated at Burlington High School. Likewise, the district court viewed Ms. Remer's sec. 1983 claim as an attack on the state court injunction

because, according to the court, the injunction operates as a "de facto" expulsion.

We cannot accept these characterizations of Ms. Remer's federal lawsuit. The state court injunction and the expulsion are not two sides of the same coin. In Wisconsin, a student expelled from a public school must endure significant collateral consequences that simply are not at issue in the state court injunction. Ms. Remer's federal claim based on the expulsion is wholly independent of the state injunction, which imposes a different, and significantly less onerous, burden upon her son. Finally, should Ms. Remer prevail in her federal lawsuit, the district court need not grant relief that would effectively reverse the state court injunction. In the following paragraphs, we shall discuss these considerations at greater length.

We cannot conclude, on this record, that M.R.'s expulsion and the state court injunction are effectively one and the same. The injunction merely prevents M.R. from calling the School District or from stepping foot on any District property. By contrast, the expulsion more strongly impacts M.R.'s educational future. Although the expulsion order prevents entry on District property, it imposes other more severe penalties on M.R. Indeed, in the record before us,/2 the School District emphasizes that, in Wisconsin, public school districts are not obligated to provide an alternative schooling method (e.g., homebound schooling) for an expelled student. Other public school districts also are not obligated to accept students who have been expelled. See Wis. Stat. sec. 120.13(f) ("No school board is required to enroll a pupil during the term of his or her expulsion from another school district."). Essentially, under Wisconsin law, an expulsion eliminates the school district's obligation to provide an education to the expelled student. On the other hand, a student on whom that sanction has not been imposed may be entitled to request, and a school district may provide, "curriculum modifications," including homebound study or enrollment in another school district. See Wis. Stat. 118.15(d). These options are not available to students who have been expelled.

Ms. Remer's sec. 1983 action, therefore, is qualitatively different from those claims we previously have held were precluded by the Rooker-Feldman doctrine. Unlike the claims in other cases in which, but for the state court determinations, the federal plaintiffs would have had no complaint, see, e.g., Kamilewicz, 92 F.3d at 511; Garry, 82 F.3d at 1368; GASH Associates v. Village of Rosemont, 995 F.2d 726, 728-29 (7th

Cir. 1993); Ritter, 992 F.2d at 754, Ms. Remer's federal claims against the School District and its school board focus on actions very different from the matter at issue in the stipulated injunction in state court. The injunction cannot be characterized as somehow confirming or endorsing the expulsion decision. Nor would the relief sought in the federal court, if granted, effectively reverse the state court judgment. See Maple Lanes, 186 F.3d at 826. Ms. Remer's lawsuit, therefore, is significantly different from our cases holding that the relief sought by the plaintiff would really go to the heart of the state court judgment./3 Although Ms. Remer has requested that her son be readmitted to Burlington High School, the district court, if it deemed the expulsion to be contrary to federal law, would be free to fashion relief that would not contradict the state circuit court's injunction that bars M.R. from District property. The district court could relieve M.R. of the consequences of an expulsion from a public school. The School District then would have the responsibility to provide M.R. with an education, albeit somewhere other than on District property.

Although Ms. Remer's sec. 1983 action is based on the same situation that gave rise to the state court injunction, it does not call into question the validity of or impair the enforceability of the state court injunction. Therefore, on this record, we hold that the Rooker-Feldman doctrine does not preclude federal subject matter jurisdiction.

C. Claim Preclusion

1.

The School District also has urged us to affirm the district court's judgment on the basis of claim preclusion. Our review of a dismissal on claim preclusion grounds is de novo. See Andersen v. Chrysler Corp., 99 F.3d 846, 852 (7th Cir. 1996); Humphrey v. Tharaldson Enters., Inc., 95 F.3d 624, 626 (7th Cir. 1996).

2.

The "Full Faith and Credit" statute, 28 U.S.C. sec. 1738, requires federal courts in a sec. 1983 action to give state court judgments the same preclusive effect those judgments would have in the rendering state's courts. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 80-81 (1984); Allen v. McCurry, 449 U.S. 90, 104 (1980). According to the School District, the state court injunction precludes Ms. Remer's sec. 1983 claims under the doctrine of claim preclusion. To decide whether the School District

is correct, we must look to Wisconsin law to determine whether Ms. Remer's sec. 1983 claims would be precluded by the state court injunction.

In Wisconsin, the doctrine of claim preclusion, or res judicata,/4 provides that a "final judgment on the merits bars parties from relitigating any claim that arises out of the same relevant facts, transactions or occurrences." Sopha v. Owens-Corning Fiberglas Corp., 601 N.W.2d 627, 636 (Wis. 1999); see also Northern States Power Co. v. Bugher, 525 N.W.2d 723, 727 (Wis. 1995). "Ordinarily a final judgment is conclusive in all subsequent actions as to all matters 'which were litigated or which might have been litigated in the former proceedings.'" Sopha, 601 N.W.2d at 637 (quoting DePratt v. West Bend Mut. Ins. Co., 334 N.W.2d 883, 885 (Wis. 1983)). For claim preclusion to apply, Wisconsin's courts require the presence of three factors: (1) an "identity between the parties or their privies in the prior and present suits"; (2) the "prior litigation resulted in a final judgment on the merits by a court with jurisdiction"; and (3) an "identity of the causes of action in the two suits." Sopha, 601 N.W.2d at 637 (footnotes omitted); see also Northern States, 525 N.W.2d at 728.

It is important to remember that, in the state court proceeding, the School District filed its complaint against M.R., which made M.R. the defendant in that action. As a general rule in Wisconsin, "where a defendant may interpose a counterclaim but fails to do so, he is not precluded from maintaining a subsequent action on that claim." A.B.C.G. Enters., Inc. v. First Bank Southeast, N.A., 515 N.W.2d 904, 908 (Wis. 1994) (citing Restatement (Second) of Judgments sec. 22(1) (1982)); see also Wis. Stat. sec. 802.07(1) ("A defendant may counterclaim any claim which the defendant has against the plaintiff . . . ."). Assuming for the moment that there is privity between M.R. and his mother (indeed, assuming that all three claim preclusion factors are otherwise present here), the question for us to resolve is whether, under Wisconsin law, the Remers' federal claims needed to be brought as counterclaims against the School District as part of the state court litigation. Under the general permissive counterclaim rule, Ms. Remer's federal claims would not be precluded by the state court litigation. The general rule in Wisconsin, however, is subject to an exception. In A.B.C.G. Enterprises, the Supreme Court of Wisconsin recognized a "narrowly defined class" of "common-law compulsory claims" that, when not raised by a defendant in the initial action, bars related claims brought in a subsequent action. 515 N.W.2d at 908 (citing Restatement (Second) of Judgments

sec. 22(2)(b) (1982)). According to the Supreme Court of Wisconsin, "the rule applies only if a favorable judgment in the second action would nullify the judgment in the original action or impair rights established in the initial action." A.B.C.G. Enters., 515 N.W.2d at 515; see also Estate of Burgess v. Peterson, 571 N.W.2d 432, 437 (Wis. Ct. App. 1997), review denied, 580 N.W.2d 688 (1998); Marten Transp., Ltd. v. Rural Mut. Ins. Co., 543 N.W.2d 541, 542 (Wis. Ct. App. 1995). To illustrate the contours of this exception, the Supreme Court of Wisconsin quoted extensively from the Restatement (Second):

Normally, in the absence of a compulsory counterclaim statute or rule of court, the defendant has a choice as to whether or not he will pursue his counterclaim in the action brought against him by the plaintiff. There are occasions, however, when allowance of a subsequent action would so plainly operate to undermine the initial judgment that the principle of finality requires preclusion of such an action. . . . For such an occasion to arise, it is not sufficient that the counterclaim grow out of the same transaction or occurrence as the plaintiff's claim, nor is it sufficient that the facts constituting a defense also form the basis of the counterclaim. The counterclaim must be such that its successful prosecution in a subsequent action would nullify the judgment, for example, by allowing the defendant to enjoin enforcement of the judgment, or to recover on a restitution theory the amount paid pursuant to the judgment or by depriving the plaintiff in the first action of property rights vested in him under the first judgment.

A.B.C.G. Enters., 515 N.W.2d at 908 (quoting Restatement (Second) of Judgments sec. 22 cmt. f).

3.

We do not believe that Ms. Remer's federal claims fall into the category of compulsory counterclaims recognized by the Supreme Court of Wisconsin. As we have explained in our discussion of the applicability of the Rooker-Feldman doctrine, success for Ms. Remer in her sec. 1983 action would not "nullify" or call into question the validity of the state court injunction. It bears repeating here that, in her federal complaint, Ms. Remer has limited her attack to the manner in which the School District expelled her son. In order for the compulsory counterclaim rule to bar Ms. Remer's federal claims, it is not enough for those claims to have arisen out of the same transaction or nucleus of facts that precipitated the original state court proceeding.

See A.B.C.G. Enters., 515 N.W.2d at 908. Rather, the purported counterclaims must threaten to undermine the first judgment if they are to be considered compulsory. See id.

Although Ms. Remer may prefer to have her son return to Burlington High, that is not the sole relief she has sought in federal court, and if Ms. Remer prevails on her federal claims, the district court can fashion relief that would redress the alleged due process violations committed by the School District while also honoring the terms of the state court injunction. Under the terms of the injunction, the School District has the right to exclude M.R. from the premises of its schools. Ms. Remer's federal lawsuit can be resolved in her favor without compromising this right or by making it meaningless. See id. at 910-11. Should the district court order the School District to reinstate M.R. as a student, the School District can utilize alternative ways to provide an education to M.R. that would not require the District to violate the terms of the injunction. Thus, we hold that, under Wisconsin's claim preclusion doctrine, Ms. Remer's sec. 1983 claims are not precluded by the state court injunction because her federal claims do not fall within the narrow category of compulsory counterclaims./5

Conclusion

For the foregoing reasons, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion. Ms. Remer may recover her costs in this court.


REVERSED and REMANDED


/1 The school board members named in Ms. Remer's complaint are Larry Anderson, William C. Campbell, Scott Barrett, Patricia Snyder, David Steighner, Paul Mantey and Jeremy Fitch.

/2 In one of its submissions to the district court, the School District explained that "once a student has been expelled from a school, that district no longer has the responsibility to provide educational services to the student." R.7 at 6. Moreover, the School District included in the record two decisions from the State Superintendent of Public Instruction, Susan Marie H. v. Kenosha Unified School District, Decision and Order No. 157 (June 28, 1988), and Ricardo S. v. School District of Wisconsin Rapids, Decision and Order No. 145 (Sept. 5, 1986); these decisions confirm the District's position. See

R.8, Ex.T at 157-9 to 157-10; R.8, Ex.U at 145-6 to 145-7.

/3 For example, in Maple Lanes, the plaintiff sought to undo the effect of the revocation of its liquor license by filing a civil rights action in federal court against the sheriff who enforced the license revocation. We observed that "[i]f a federal court were to award the relief [the plaintiff] seeks in the form of monetary damages equal to the value of the liquor license, this result would effectively reverse the state court judgment upholding the revocation of the liquor license." 186 F.3d at 826.

/4 Wisconsin has adopted the term "claim preclusion" as a replacement for the traditional "res judicata." See Northern States Power Co. v. Bugher, 525 N.W.2d 723, 727 (Wis. 1995). Because we are applying Wisconsin law, we shall use the terminology adopted by the Wisconsin courts.

/5 The School District has argued that the analysis in Plough v. West Des Moines Community Sch. Dist., 70 F.3d 512 (8th Cir. 1995), controls the outcome in our case. Plough, however, offers us little guidance. Our inquiry is limited to the preclusive effect the injunction may or may not have under Wisconsin law. The issue in Plough was the extent to which Iowa law gave preclusive effect to state school board hearings. See Plough, 70 F.3d at 516, 517. Any help that Plough might provide us in our inquiry here would necessarily be limited by the similarities of Wisconsin and Iowa preclusion law.

More importantly, Plough is easily distinguishable on its facts. Plough involved a school board's decision to expel a student, but the parallel with Ms. Remer's case ends there. In Plough, the student and parent challenged the school district's expulsion decision to the state school board. Before the state school board, the student argued that the district had violated his due process rights when it expelled him. The state school board, after conducting an adversarial proceeding, made factual findings and concluded that the student's due process rights had not been violated. Then the student brought an action in federal court in which he asserted the same due process claims raised before. The court in Plough held that the student's federal lawsuit was precluded, under Iowa law, because his due process claims had already been adjudicated and rejected by the state school board. In stark contrast, Ms. Remer and M.R. have never raised their due process claims with respect to the expulsion. Nor, under Wisconsin law, did they have an obligation to do so.