In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1836

4901 Corporation, an Illinois corporation,
d/b/a Pure Gold and Dollounge, Incorporated,
an Illinois corporation, d/b/a Dollounge,

Plaintiffs-Appellants,

v.

Town of Cicero, an Illinois municipal corporation,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 326--Charles R. Norgle, Sr., Judge.

Argued November 4, 1999--Decided July 17, 2000

Before Manion, Kanne, and Evans, Circuit Judges.

Manion, Circuit Judge.  The 4901 Corporation and
Dollounge, Inc., ("Bars") are striptease bars in
Cicero, Illinois. The Bars and Cicero agreed in
1997 to settle a state court action where the
Bars had challenged Cicero's repeal of a
provision of its municipal code providing for
late night liquor licenses. Within a year the
Bars sued Cicero again, this time in federal
court, challenging their duty to comply with
Cicero's Adult Use Ordinance--another part of the
town's licensing mechanism for striptease bars--
which seemed to be a part of the 1997 settlement
agreement. The district court ultimately found
that res judicata barred the Bars' federal
lawsuit and entered judgment in favor of Cicero.
Although the Bars' arguments about the settlement
agreement are waived and their challenge to the
Adult Use Ordinance is barred by res judicata, we
dismiss the appeal because we lack jurisdiction
to consider the Bars' claims under the Rooker-
Feldman doctrine.

I.  Background

   For at least the last few years, the Bars had
been providing nude or semi-nude female dancing
in Cicero and had been staying open until 6:00
a.m., pursuant to a Cicero Class A/F liquor

license. A "Class A" liquor license allows taverns to serve liquor until 2:00 a.m.; a "Class F" (late hour) liquor/entertainment license allowed taverns to serve liquor and provide entertainment until 6:00 a.m. (Cicero asserts that the "entertainment" aspect of that provision never did cover nude dancing, so to speak.) Cicero also has a more generic "entertainment" license provision (Section 5-9) for what the Bars call "non-adult" entertainment, and it has an "Adult Use Ordinance" for erotic entertainment (called "adult uses"). This ordinance requires businesses offering erotic entertainment to obtain licenses, and it requires their employees to wear at least minimal clothing. The employees also must refrain from exposing certain body parts and from engaging in certain sexual acts. These three provisions are how Cicero has regulated nude dancing.

When the Bars applied to renew their A/F liquor licenses at the end of 1996, Cicero advised them that it had repealed the provision of its Liquor Control Ordinance allowing F licenses. It also told them that, for the first time, they would have to obtain Entertainment Licenses under Section 5-9. The Bars responded by filing an action in state court in January 1997, challenging on numerous grounds the repeal of the Class F liquor license provision. They alleged that the repeal of this provision deprived them of due process and the equal protection of the laws under both the Illinois and United States Constitutions and that it violated their rights to freedom of expression under the First Amendment to the federal constitution. They also alleged that the repeal of the F license provision violated Illinois' Liquor Control and Administrative Procedures Acts as well as the common law. The Bars did not challenge Cicero's Adult Use Ordinance, although it is clear from their state court complaint that they were fully aware of this ordinance:

Plaintiff is likely to succeed on the merits in that Plaintiff has a vested and inalienable right guaranteed by the First Amendment to the United States Constitution to offer or provide entertainment to its patrons upon its premises as long as the entertainment falls within the realm of protected expressive conduct. Plaintiff employs female dancers whose performances fall within the lawful parameters of Section 22-301 of the Code [Cicero's Adult Use Ordinance].

State complaint, para.25 (emphasis added). As part of their relief, the Bars requested that the state court declare that they have "a vested and inalienable [First Amendment] right to offer and provide lawful entertainment upon [their]

premises as long as the entertainment falls within the realm of protected expressive conduct".

The Bars and Cicero agreed to settle the state action in March 1997. The settlement agreement provided that "upon the completion of a Town of Cicero Application For Business License with the attached Statement and the payment of the requisite application and license fees, the Town of Cicero shall issue to the [Bars] Entertainment Licenses as defined in Cicero Municipal Code Section 5-9." (Emphasis added.) The "attached statement" to the agreement pertained exclusively to the Adult Use Ordinance, and in three similar paragraphs labeled "Food And Drink Service," "Table And Personal Dancing," and "Stage Dancing," expressly referred to that ordinance and summarized its requirements. For example, the first paragraph provided:

1.  Food And Drink Service:  The women and men serving cocktails and other food and drinks shall be clad in the outfits described in the attached pictures and such clothing shall cover the specified anatomical areas specified in the Town of Cicero Adult Use Ordinance Sections 22-301 and 22-303 attached herein. In addition, any activities regarding food an [sic] drink service shall not include any of the specified sexual activities described in the Town of Cicero Adult Use Ordinance Sections 22-301 and 22-302 attached herein.

Attached to this statement were, in turn, four pictures of examples of appropriate attire for employees under the Adult Use Ordinance, a copy of Section 5-9 (the generic entertainment license provision), and a complete copy of the Adult Use Ordinance itself. The settlement agreement also provided that the Bars would voluntarily dismiss their state court action.

The state court incorporated the settlement agreement into its April 1997 order of dismissal, expressly approving, ratifying, and adopting the agreement's terms and conditions and ordering the parties to comply with them./1 The order also recounted that the Bars were voluntarily dismissing their complaint, and that the state court would retain jurisdiction over the case to enforce the agreement. The Bars applied for Entertainment Licenses by completing forms that stated they would comply with the Adult Use Ordinance. Cicero issued the Bars the licenses, but within a year, the Bars were cited for violations of the Liquor and Adult Use Ordinances and their licenses were revoked (according to the administrative complaint, one of the Bars had also, at times, been operating more like a bordello than a bar). The Bars responded by

filing this case in federal court seeking declaratory and injunctive relief as to the Adult Use Ordinance, alleging that it banned protected expression in violation of the First Amendment and gave officials too much licensing discretion in violation of the Due Process Clause of the Fourteenth Amendment.

Cicero moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) on the ground that the Bars' claims were barred by res judicata, arguing that the substance of the state and federal actions were the same, and that even if they were not, the actions were similar enough so that the Bars could have challenged the Adult Use Ordinance in the state action. The district court denied Cicero's motion, concluding that the "identity of the cause of action" requirement for res judicata was not satisfied because in the state action the Bars challenged Cicero's repeal of the "F" licencing provision of its Liquor Control Ordinance, while in the present case they were challenging Cicero's Adult Use Ordinance.

The Bars then moved for summary judgment. In opposition, Cicero maintained that the federal action was barred. It first argued that in the state court settlement the Bars agreed to comply with the Adult Use Ordinance, and that under Illinois law the settlement agreement, together with the accompanying state court dismissal order, constituted a final judgment to which federal courts must give full faith and credit. Cicero reasserted that even if the Bars did not challenge the Adult Use Ordinance in their state suit, they could have done so. The Bars replied that, for various reasons, whether they violated a settlement agreement from a prior action was irrelevant to their ability to maintain the present action./2 The district court reconsidered its prior order on Cicero's motion to dismiss, this time focusing on the settlement agreement. It held that the parties had "settled issues that are in dispute in this matter," and as a result, res judicata barred the Bars' challenges to the Adult Use Ordinance. The order stated:

Specifically, as part of the decree over which the state judge presided and approved, [the Bars] agreed to comply with the specific portions of the Adult Use Ordinance they criticize in this case. Specifically, [the Bars] agreed, as part of their application for entertainment licenses, that any men or women involved in food or drink service, table and personal dancing, or stage dancing, would be clad in clothing that would "cover the specified anatomical areas specified in the Town of Cicero Adult Use Ordinance . . . ." Attached to the agreement were photographs

demonstrating appropriate clothing. [The Bars] further agreed that all such individuals would not partake in any "specified sexual activities" described in the ordinance. Their capitulation in the state case is determinative in this matter. Because they agreed to abide by the Adult Use Ordinance, the agreement is conclusive and bars [the Bars] from asserting otherwise.

The court denied the Bars' motion for summary judgment and entered judgment in favor of Cicero. The Bars appeal./3

## II. Discussion

The Bars argue that the district court erred in dismissing their claims based on the settlement agreement. They contend that even if they agreed to comply with the Adult Use Ordinance, the agreement is either void ab initio for requiring them to abide by an unconstitutional law, or it is unenforceable because Cicero has not established that the Bars knowingly waived their right to challenge the Adult Use Ordinance in the future. The Bars also argue that they did not, in fact, agree to comply with that ordinance or agree that the ordinance is constitutional (according to the Bars, they only agreed to fill out forms stating they would comply with the ordinance)./4

## A. Rooker-Feldman

Before we address whether the settlement agreement bars the Bars' federal lawsuit as res judicata, we must answer a threshold question (which neither of the parties has raised); we must determine whether, under the Rooker-Feldman doctrine, we have jurisdiction to review the Bars' claims. Garry v. Geils, 82 F.3d 1362, 1364 (7th Cir. 1996) (Rooker-Feldman can be raised sua sponte); see also Young v. Murphy, 90 F.3d 1225, 1230 (7th Cir. 1996). If Rooker-Feldman applies, we lack jurisdiction to consider whether the district court correctly dismissed the Bars' claims as res judicata. Garry, 82 F.3d at 1365; Centres, Inc. v. Town of Brookfield, Wis., 148 F.3d 699, 703 (7th Cir. 1998).

The Rooker-Feldman doctrine "essentially precludes lower federal court jurisdiction over claims seeking review of state court judgments or over claims that are 'inextricably intertwined' with state court determinations." Remer v. Burlington Area Sch. Dist., 205 F.3d 990, 996 (7th Cir. 2000) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 n.16 (1983)). It "is based upon recognition of the fact that inferior federal courts generally do not have the power to

exercise appellate review over state court decisions." Garry, 82 F.3d at 1365. Therefore, except for situations in which Congress has specifically authorized collateral review of state court judgments, a party who seeks to overturn a state court judgment must proceed through the state judicial system and can only seek federal court review in the United States Supreme Court pursuant to 28 U.S.C. sec. 1257. See Garry, 82 F.3d at 1365 & n.4; Young, 90 F.3d at 1230.

To determine whether Rooker-Feldman applies, we "ask whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." Kamilewicz v. Bank of Boston Corp., 92 F.3d 506, 510 (7th Cir. 1996). "Put another way, if the injury which the federal plaintiff alleges resulted from the state court judgment itself, then Rooker-Feldman controls, and the lower federal courts lack jurisdiction over the claim. It does not matter that the state court judgment might be erroneous or even unconstitutional. Nor does it matter that the time for appeal to the United States Supreme Court may have passed." Id.

In this case, the Bars first concede that they agreed to comply with the Adult Use Ordinance but ask us either to declare the agreed judgment void ab initio for requiring them to abide by an unconstitutional law or to declare the agreed judgment unenforceable (or essentially void) because Cicero has not shown that the Bars knowingly waived their right to challenge the Adult Use Ordinance in the future./5 With this argument, though, the Bars essentially acknowledge that it is the agreed judgment that is most immediately injuring them by preventing them from challenging the Adult Use Ordinance. See id. at 511 ("[T]he plaintiffs' injuries are a result of the state court judgment. Their claim in federal court is a multi-pronged attack on the approval of the settlement . . . ."). To remedy this injury the Bars unabashedly ask us to set that judgment aside. This is a "most straight-forward presentment" of Rooker-Feldman. Remer, 205 F.3d at 996. Voiding (effectively reversing) the state court judgment is something we may not do. See Garry, 82 F.3d at 1365. If the Bars thought the agreement was unconstitutional, they either should not have entered into it, or after they did, they should have litigated its constitutionality in the state court system, pursuing the matter, if need be, to the United States Supreme Court. Id. at 1368. For whatever reason the Bars did not raise these issues at the appropriate time in state court; Rooker-Feldman denies us jurisdiction to consider them now./6

## B. Waiver

Even assuming that we had jurisdiction, the Bars' claims would fail for other reasons. The Bars try to get out from under the agreement by arguing that they did not, in fact, agree to abide by the Adult Use Ordinance; rather, they contend that they just agreed to fill out the application forms for the Entertainment Licenses. Of course the forms specifically state that they will comply with the Adult Use Ordinance. As we discuss later, the Bars' attempt to dissect their agreement is disingenuous. On this issue, though, the Bars spared the district court from having to go through their machinations over exactly what they did and did not agree to do. For while the Bars did, in one sentence, mention to the district court that the agreement did not preclude them from later challenging the Adult Use Ordinance, they did not openly deny that they had, in fact, agreed to comply with that ordinance (see n.2, supra)./7 And they clearly did not argue, as they now do, that they simply agreed to fill out forms. Nor did they ever attempt to make either the void ab initio or "knowing waiver" arguments. As we have often said, specific arguments not raised below are waived on appeal. Libertyville Datsun Sales, Inc. v. Nissan Motor Corp. in U.S.A., 776 F.2d 735, 737 (7th Cir. 1985) ("It is not enough that the 'general issue' of the Act and the Agreement with attached Amendment were before the district court. The arguments that are specifically based on the Amendment must also be presented to the court."). Because the Bars had the opportunity and the obligation to raise these arguments to the district judge yet failed to do so, they are now waived. Pond v. Michelin N. Am., Inc., 183 F.3d 592, 597 (7th Cir. 1999).

## C. Res Judicata

Although we have determined that Rooker-Feldman on one hand and waiver on the other doom the Bars' appeal, the district court dismissed their challenges to the Adult Use Ordinance on a third ground, res judicata. The Bars of course argue that the district court erred in doing so. Even if properly preserved, however, this argument would not succeed.

"Because an Illinois state court rendered the . . . order at issue, we must apply Illinois law to determine whether res judicata bars [the Bars'] claims." Long v. Shorebank Dev. Corp., 182 F.3d 548, 560 (7th Cir. 1999); Whitaker v. Ameritech Corp., 129 F.3d 952, 955 (7th Cir. 1997). For under 28 U.S.C. sec. 1738, we must give a state court judgment "full faith and credit," meaning that we must give the settlement agreement the

res judicata effect an Illinois court would give it. Torres v. Rebarchak, 814 F.2d 1219, 1222 (7th Cir. 1987) (applying Illinois law). If an Illinois court would prevent the Bars from challenging the Adult Use Ordinance due to the settlement agreement, so must we. Id.

Res judicata bars a later suit between parties involving the same cause of action and includes "what was actually decided in the first action, as well as those matters that could have been decided in that suit." River Park, Inc. v. City of Highland Park, 703 N.E.2d 883, 889 (Ill. 1998). "For the doctrine of res judicata to apply, the following three requirements must be satisfied: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause[s] of action, and (3) there is an identity of parties or their privies." Id. The third requirement is not at issue here.

With respect to the first requirement, under Illinois law a settlement agreement that a state court adopts and incorporates, like the agreement here, is the equivalent of a consent decree. Ad-Ex, Inc. v. City of Chicago, 565 N.E.2d 669, 678 (Ill. App. Ct. 1990) (supplemental opinion on denial of rehearing); cf. Wehde v. Regional Transp. Authority, 604 N.E.2d 446, 462 (Ill. App. Ct. 1992). As such, it "operates to the same extent for res judicata purposes as a judgment entered after contest and is conclusive with respect to the matters which were settled by the judgment or decree." City of Mattoon v. Mentzer, 668 N.E.2d 601, 606 (Ill. App. Ct. 1996). This conclusive effect pertains to any issue which might have been raised in the proceeding. Arnett v. Environmental Science & Eng'g, Inc., 657 N.E.2d 668, 673 (Ill. App. Ct. 1995). Because the Bars voluntarily dismissed their state court claims pursuant to the settlement agreement, the state court dismissal order (adopting that agreement) is a final judgment that is entitled to res judicata effect. Jackson v. Schencker & Schencker, 494 N.E.2d 669, 670 (Ill. App. Ct. 1986); see also Torres, 814 F.2d at 1223 ("res judicata applies even if the dismissal was the result of a settlement or compromise between the parties.").

The Bars argue that the second requirement of res judicata is not met because their state action was different; it concerned Cicero's repeal of the Class "F" liquor license provision of its code. This is true but irrelevant. The Bars broadened that action--at least for res judicata purposes--by agreeing to a settlement of that case which included their obligation to comply with the Adult Use Ordinance. As noted,

the Bars maintain that they agreed only to complete forms that recited adherence to the Ordinance, but their parsing of the agreement is disingenuous.

Although the Bars and Cicero perhaps did not draft the agreement as artfully as they could have, there is no mystery here./8 The agreement included a complete copy of the Adult Use Ordinance, photographs showing employees how to dress to comply with it, and, moreover, a license application that repeatedly referred to that ordinance and set forth its requirements in great detail. The agreement incorporated this application by reference and stated that the Bars would complete it (which they did) in exchange for receiving an Entertainment Licence (which they got). Agreeing to complete forms that state you will abide by an ordinance has the same effect as agreeing to abide by that ordinance. The Bars cannot elevate form (or in this case, forms) over substance. Their agreement to comply with the Adult Use Ordinance bars as res judicata a later challenge to it, and the district court therefore correctly entered judgment for Cicero. See Menzer, 668 N.E.2d at 606.

But even if the Bars did not specifically agree to comply with the Adult Use Ordinance, did not agree it was constitutional, or did not agree not to challenge it in the future, res judicata would still bar their challenge to it, for the doctrine precludes not only claims that were brought (or settled) in a prior action, but those that could have been brought as well. River Park, 703 N.E.2d at 889. Illinois recently broadened its approach to determining what claims could have been brought in a prior action for purposes of res judicata's "identity of the causes of action" component. In River Park, which neither of the parties has discussed, the Illinois Supreme Court rejected the continued use of the "same evidence" test in favor of the more expansive "transactional test." See id. at 892-893. The transactional test "is more pragmatic" than the same evidence test. Id. at 892. "Under this approach, a claim is viewed in 'factual terms' and considered 'coterminous with the transaction, regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; . . . and regardless of the variations in the evidence needed to support the theories or rights.'" Id. (quoting Restatement (Second) of Judgments sec. 24 cmt. a (1982)).

The Illinois Supreme Court looked to the Restatement (Second) of Judgments to help explicate this test. See id. at 893. Under the Restatement, a valid and final judgment

extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Id. (quoting Restatement (Second) of Judgments sec. 24(1) (1982)). "What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment conforms to the parties' expectations or business understanding or usage." Id. (quoting Restatement (Second) of Judgments sec. 24(2) (1982))./9

In this case, it is true that the Bars' duty to abide by the Adult Use Ordinance was not part of the particular "transaction" that prompted them to file their state action; the Bars evidently filed that case because Cicero had repealed the late night (Class F) liquor license provision and because Cicero was requiring the Bars to obtain an Entertainment License under Section 5-9. But when they filed the state action, the Bars clearly knew that the Adult Use Ordinance also regulated the activities in which they wanted to engage; indeed, they specifically discussed it in paragraph 25 of their state court complaint. Moreover, the Bars were parties to a settlement agreement which--if it did not precisely include their obligation to comply with the Adult Use Ordinance--at the very least thoroughly informed the Bars of exactly what their obligations were under it (including by providing photographs of suitable attire and a complete copy of the ordinance itself). It is also important to note that the Bars are arguing that the Adult Use Ordinance is facially unconstitutional. See Initial Appellate Brief at 13. They do not point to facts subsequent to the agreement (in other words, there is no subsequent "transaction") which are crucial to the Bars' ability to challenge that ordinance. The Bars do not contend that Cicero applied the Adult Use Ordinance to them after they entered into the agreement in a way that was necessary to their ability to challenge it, nor do they contend that without such an application they would not have been able to challenge the Adult Use Ordinance earlier, either when they filed their state complaint (and expressly referred to that ordinance) or when they settled that case (wherein they extensively discussed that ordinance).

Thus, the Bars' state court complaint and their settlement of the case were really part of a "series of connected transactions," River Park, 703 N.E.2d at 893, pertaining to their various

obligations under Cicero's municipal code in offering erotic entertainment. Given the transactional test's emphasis on pragmatism in determining whether a claim could have (and thus should have) been decided in a prior action, see id. at 892-893, it is certainly fair to say that any problems the Bars had with the Adult Use Ordinance could have been adjudicated in the state action. Litigating its facial constitutionality along with the constitutionality of Cicero's repeal of the Class F liquor license provision would have formed a convenient trial unit. See id. at 893. The core facts that would be relevant to both claims--the Bars' past practice of offering nude or semi-nude erotic female dancing and their desire to continue to do so--"are related in time, space, origin, or motivation." See id. The relief the Bars requested in both lawsuits was also essentially the same (a declaration that they had a First Amendment right to offer the erotic entertainment that they had been providing). Because the constitutionality of the Adult Use Ordinance is a claim that could have easily been brought when the Bars filed their state suit, or could have just as easily been considered when they settled that suit, the Bars would be precluded by res judicata from now challenging it.

III.  Conclusion

   Although the Bars attempt to argue that the settlement agreement did not include their agreement to comply with the Adult Use Ordinance, they have waived that argument. But even if they preserved it, as the district court found, their challenge to the Adult Use Ordinance would be barred by res judicata. All that being said, however, under the Rooker-Feldman doctrine this court lacks jurisdiction, and we therefore dismiss the appeal.

/1 The order stated "That the Settlement Agreement, attached hereto, incorporated herein and made a part hereof marked Exhibit 'A,' is hereby approved and ratified by this Court, the terms and provisions of which being ordered hereby".

/2 The Bars asserted that the settlement agreement did not preclude their challenges to the Adult Use Ordinance because: 1) as the district court had held, the subject matter from the prior action was different from the subject matter of the present action; 2) there was nothing in the settlement agreement that precluded the Bars from instituting future litigation; 3) it was beyond the power of the district court to force the Bars

to comply with that agreement (if Cicero wanted to force compliance, it would have to return to state court); and 4) if the district court held that the Adult Use Ordinance was unconstitutional, "that portion of the Agreement which relies upon the provisions of the 'Town of Cicero Adult Use Ordinance,' by its very terms, would become a nullity."

/3 Cicero argues that we do not have jurisdiction over this appeal because it is an uncertified interlocutory appeal from the denial of a motion for summary judgment. Cicero is mistaken. The district court's ruling reconsidered its denial of Cicero's motion to dismiss, and its entry of judgment in Cicero's favor disposes of all the claims of all the parties in this action. This case is thus properly before us. See 28 U.S.C. sec. 1291; H.K. Mallak, Inc. v. Fairfield FMC Corp., 209 F.3d 960, 962 (7th Cir. 2000); United States v. Davenport, 106 F.3d 1333, 1334-35 (7th Cir. 1997).

/4 Cicero attached to its motion to dismiss the state court order of dismissal and accompanying settlement agreement. The district court relied upon these exhibits in reconsidering Cicero's motion. We nevertheless view the district court as dismissing the Bars' claims, rather than entering summary judgment against them, see Fed. R. Civ. P. 12(b), because the district court could take judicial notice of the state court order. See Henson v. CSC Credit Serv., 29 F.3d 280, 284 (7th Cir. 1994); Mandarino v. Pollard, 718 F.2d 845, 849 (7th Cir. 1983). In any event, the standard of review would be the same. Compare Roboserve, Inc. v. Kato Kagaku Co., Ltd., 121 F.3d 1027, 1034 (7th Cir. 1997) (summary judgment on grounds of res judicata is reviewed de novo) with Brzostowski v. Laidlow Waste Syst., Inc., 49 F.3d 337, 338 (7th Cir. 1995) (dismissal of case on grounds of res judicata is reviewed de novo). /5 The state court approved settlement agreement is a judgment or decision for purposes of the Rooker-Feldman doctrine. See id. at 508-512 (Rooker-Feldman doctrine applied to court-approved settlement).

/6 A state court judgment that is void ab initio due to the state court's lack of jurisdiction has been held to be an exception to the Rooker-Feldman doctrine. See In re James, 940 F.2d 46, 52 (3d Cir. 1991) (stating that federal court may review state court judgment when state court lacked personal or subject matter jurisdiction); In re Ferren, 203 F.3d 559, 560 (8th Cir. 2000) (declining to create void ab initio exception to Rooker-Feldman doctrine when state court allegedly interfered with bankruptcy court jurisdiction but noting split among bankruptcy

appellate panels). The Bars do not, however, contend that the state court lacked jurisdiction over them or over the subject matter of their action; rather, they contend that the state court erred in adopting and approving an agreement that is allegedly unconstitutional. Such a situation, even if true, is plainly one where Rooker-Feldman bars our review. See Remer, 205 F.3d at 996 ("The Rooker-Feldman doctrine precludes federal jurisdiction . . . no matter how erroneous or unconstitutional the state court judgment may be . . . ."); Kamilewicz, 92 F.3d at 510 (same).

/7 Indeed, the Bars more than once implicitly argued the opposite to the district judge. See Summary Judgment Reply at 2 (arguing that whether they violated a settlement agreement from another case is irrelevant to their ability now to challenge the Adult Use Ordinance); id. at 7 (arguing that it is beyond the power of the district court to force the Bars to comply with the agreement and that if Cicero wanted to force compliance, it would have to return to state court). The most glaring of these arguments was the Bars' contention that if the district court declared the Adult Use Ordinance to be unconstitutional, "that portion of the Agreement which relies upon the provisions of the 'Town of Cicero Adult Use Ordinance,' by its very terms, would become a nullity." Id. at 7-8 (emphasis added). This is much different from arguing, as the Bars now do, that they never agreed to abide by that ordinance in the first place. See Gibson v. West, 201 F.3d 990, 992 (7th Cir. 2000) (previously arguing opposite premise belied the notion that plaintiff preserved the argument).
/8 This parsing also seems to contradict what the Bars told us at oral argument, where they appeared to acknowledge that they did agree to abide by the Adult Use Ordinance ("The only difficulty here is the defendant's claim that our agreement, the plaintiffs' agreement, in state court to comply with Cicero's laws, which included the Adult Use Law, although not enforced against plaintiffs, was somehow res judicata, in that our case in federal court deals with the Adult Use Law and in state court the Adult Use Law, I would say, was tangentially brought up."); ("If they did agree to comply with the Cicero laws, which I don't deny that they did, they were not aware or it was not at issue, whether or not the Adult Use Law was constitutional or not; we're only talking about the liquor law and the entertainment law which they essentially agreed to."); ("They agreed clearly to comply with these laws, but I think that implied in their agreement is that the laws be constitutional.").

/9 The Illinois Supreme Court noted that the "Restatement further provides that a claim is

extinguished under these principles, 'even though the plaintiff is prepared in the second action (1) To present evidence or grounds or theories of the case not presented in the first action, or (2) To seek remedies or forms of relief not demanded in the first action.'" Id. (quoting Restatement (Second) of Judgments sec. 25 (1982)).