**In re ESTATE of Mark C. ROYAL, Debtor.**

**Joseph A. Baldi, Trustee of the Estate of Mark C. Royal, Debtor, Plaintiff,**

**v.**

**Ann Carey, a/k/a/, Ann Carey Royal, Defendant.**

**Bankruptcy No. 00–15740.**

**Adversary No. 02 A 00219.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 14, 2003.

Michael F. Lefkow, Esq., Chicago, IL, for Plaintiff.

Donald P. Smith, Esq., for Defendant.

### MEMORANDUM OPINION ON DEFENDANT'S MOTION TO DISMISS

JACK B. SCHMETTERER, Bankruptcy Judge.

This adversary proceeding relates to the Chapter 7 bankruptcy case filed by the Debtor Mark C. Royal ("Mark" or "Debtor"). It is an action by the Chapter 7 Trustee as Plaintiff to recover proceeds from what is asserted to have been a fraudulent conveyance of Debtor's interest in his former marital residence to Ann Carey, (the "Defendant" or "Ann"), the Debtor's former wife. Ann moved to dismiss the Plaintiff's Second Amended Adversary Complaint for failure to state a cause for which relief can be granted, and also on the basis that the complaint is a collateral attack on the order dissolving Ann's marriage to the Debtor entered in the Circuit Court of Cook County, Illinois (the "Circuit Court"), and therefore barred under the *Rooker–Feldman* doctrine.

For reasons set forth below, the motion to dismiss will be granted so as to strike all prayers for relief seeking recovery in excess of the $11,000 due Debtor as his equitable interest, and evidence pertaining to stricken prayers will be barred *in limine.*

All facts stated below were found in pleadings of Plaintiff in the Second Amended Complaint or in rulings of the Circuit Court of Cook County as to which judicial notice is taken.

### BACKGROUND

The subject of this dispute concerns a transaction involving the former marital residence of Debtor Mark and the Defendant Ann, which is now owned exclusively by the Defendant. Until their separation in 1996, Mark and Ann jointly owned a residence at 1447 Tower Road in Winnetka, Illinois. The parties separated on January 3, 1996, and have continuously lived apart ever since. (State court Findings of Fact, Conclusions of Law and Judgment For Dissolution of Marriage, P.2). Ann commenced a marriage dissolution proceeding in 1997 in the Circuit Court, and on May 25, 2000, Mark filed for Bankruptcy protection under Chapter 7 of the Bankruptcy Code Title 11 U.S.C. (the "Code").

Because § 362 of the Code stayed the divorce proceeding, Ann moved to modify the automatic stay, and an agreed order was entered herein on June 23, 2000, (the "June 23 Order") which provided in part as follows:

1. The automatic stay, under § 362 of the Code, is hereby modified to allow the Divorce Case to proceed to trial in the Domestic Relations Court, in order to determine the respective equitable interests of the Debtor and Mrs. Royal to the Marital Property, if any;

2. Thereafter, to the extent it is determined by the Domestic Relations

Court that the Debtor has an equitable interest in any Marital Property owned by Mrs. Royal, that interest shall be administered by the Trustee for the benefit of the creditors of the Debtor's bankrupt estate;

Ten months later, on April 18, 2001, the State Court judge entered an order which dissolved Ann's marriage to the Debtor and distributed the parties' marital assets (the "April 18 Order").

In 2001, each party was in his and her early forties and in good health. Ann was employed as a real estate executive, and in 1999 and 2000 her gross wages were $100,240.00. Mark was self-employed in real estate sales. His gross income was significantly lower. He grossed $51,016.00 in 1998, $19,392.00 in 1999, and $47,059.00 in 2000.

Mark did not file federal or state tax returns for several years after 1996. He filed late returns for those years during 2000, but was unable to pay the taxes due because he had no funds.

After Ann initiated the dissolution of marriage proceeding, the parties defaulted as to payments due on their second mortgage. The First National Bank of Chicago brought a foreclosure action on May 4, 1998, on that mortgage which secured the parties' equity line of credit (Circuit Court of Cook County, Case No. 98 CH 5871). Ann sought to refinance the Marital Residence during 1999 to avoid foreclosure and sale. She obtained an appraisal reflecting the value of the residence to be $431,000. Mark agreed to a refinance of the property based on that appraisal. He subsequently surrendered his legal interest in the marital residence through a pre-bankruptcy March 15, 1999, order of the Circuit Court in the divorce proceeding, though he retained an equitable interest to be resolved by that court. Mark then executed a quit claim deed to Ann subject to a reservation of his marital rights in any equity. Ann redeemed the property by refinancing the first and second mortgages on equity line of credit through a loan of $331,000 from Lake Forest Bank and Trust Company which required her additional expense of $35,129.00.

The subject residential property remains subject to that $331,000 refinance loan, which is Ann's obligation. Since March 22, 1999, she has serviced payments due on the mortgage, and also paid home owner's insurance, real estate taxes, repairs, and maintenance. The Circuit Court determined that the marital equity was $76,000 after taking into account the Lake Forest Bank mortgage and the $35,129.00 advanced by Ann.

On April 18, 2001, the Circuit Court issued its Final Judgment (the "Marriage Dissolution Order") and thereby determined that Mark's interest in the marital estate was small. Based upon consideration of all the evidence, that judge charged Mark's marital estate with $50,000 of marital property that had been dissipated by him, and offset that amount against his equitable share of the marital assets. To prove the dissipation, Ann produced bank records, copies of checks, foreclosure proceeding, and refinance charges, which the State Court judge found to demonstrate that Mark had dissipated funds from loans on the parties' equity line of credit for purposes unrelated to the marriage.

The Circuit Court judgment was entered pursuant to the Illinois Marriage and Dissolution of Marriage Act 750 ILCS 5/503(d). Under that Act, the court was required to divide the marital property in just proportions considering relevant factors, including the contribution of each party to the acquisition and preservation of the property, dissipation of property by each party, the value of the non-marital

property assigned to each spouse, the duration of the marriage, the assignment of debt responsibility to each spouse, and the custodial provisions for the minor children. Based upon testimony of Ann and the Debtor, the Circuit Court made express findings of fact and conclusions of law regarding, among other things, the parties' dissipation of marital assets, the value of their respective contributions to the marital estate, the value of IRAs and other brokerage accounts, the value of the Marital Residence and extraordinary medical and dental expenses Ann incurred for the parties' three minor children. Accordingly, the Circuit Court decided that the $50,000 dissipated by Mark should be restored to the marital estate and offset against Mark's equitable share of marital assets. The dissolution order ruled that upon receipt by Mark of a $11,000 lump sum cash payment due from Ann, he would have no further equitable interest in the marital property. Therefore, Mark's equitable interest was adjudged to be limited to $11,000.

As part of the State Court's analysis, based upon its review of two real estate appraisals, in the sums of $430,000 and $440,000, respectively, the Circuit Court order determined that the Marital Residence had a fair Market value of $440,000 as of April 19, 2001. When the Debtor filed his petition for bankruptcy on May 25, 2000, his schedule listed the value of the marital residence at $420,000.

On July 17, 2001, the Chapter 7 Trustee in Mark's related bankruptcy case filed a no asset report, and the bankruptcy case was closed on July 26, 2001. On October 3, 2001, the Trustee moved to vacate his no asset report and reopen the case for the purpose of filing this adversary action against Ann. That motion was granted and on March 4, 2002, the Trustee filed this Adversary proceeding.

Through the instant Complaint, the Trustee seeks to bring into the bankruptcy estate for benefit of creditors property that was divided between Debtor and the Defendant by the Circuit Court. He rejects the findings by that court, contending that the appraisal used to refinance the Marital Residence significantly understated value of the property.

The Trustee's Complaint alleges theories of recovery for fraudulent transfers under three statutes: (1) the Illinois Uniform Fraudulent Transfer Act, 740 ILCS Section 160/1 *et seq.*, (2) 11 U.S.C. § 548(a)(1)(B)(I) and (ii)(1)(*l*) and (3) 11 U.S.C. § 549. Defendant has moved to dismiss these claims under Rule 12 Fed. R.Civ.P. which is incorporated in Rule 7012 Fed.R.Bankr.P., contending that the complaint is barred by the *Rooker–Feldman* doctrine. Ann also maintains that a recovery under 11 U.S.C. § 548 is barred for three reasons: (1)because the challenged transfer occurred more than one year prior to the date on which the Bankruptcy Petition was filed; (2) the Complaint does not allege sufficient facts to state a claim under the Illinois Act; and (3) Section 549 is inapplicable based upon the June 23 Order in Debtor's bankruptcy case in which this Court authorized the Circuit Court to determine "the respective equitable interests of the Debtor and Mrs. Royal to the Marital Property."

### JURISDICTION

This Court has core jurisdiction over the reach of the automatic stay to protect acts against a debtor's property. 28 U.S.C. 1334(b), 157(b)(2)(A), (G), (O).

### STANDARDS ON MOTION TO DISMISS

Dismissal for failure to state a claim is proper if it appears that plaintiffs can prove no set of facts in support of their claims that would entitle them to relief.

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In order to prevail upon a motion to dismiss, the defendant must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence. *Gomez v. Illinois State Bd. of Education*, 811 F.2d 1030, 1039 (7th Cir.1987). Well pleaded facts are taken as admitted for purpose of a Motion to Dismiss. Therefore, all well-pleaded facts alleged in the pleadings are construed in a light most favorable to the non-moving party. *Prince v. Rescorp Realty*, 940 F.2d 1104, 1106 (7th Cir.1991).

However, when the Defendant is charged with fraudulent activity, the plaintiff must state with particularity the circumstances constituting fraud. Fed. R.Civ.P. 9(b). The plaintiff must identify particular statements and actions and specify why they are fraudulent. *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 818 (7th Cir.1987). Conclusory allegations do not satisfy the requirements of Rule 9(b) and subject the pleader to dismissal. *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir.1985).

Additionally, this Court may take judicial notice of orders entered by the Circuit Court in the Dissolution Proceeding. *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir.1994), *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir.1991); *see also, Soto v. PNC Bank*, 221 B.R. 343, 347 (Bankr.E.D.Pa.1998) (when deciding a motion to dismiss, a federal court may take judicial notice of pleadings and records of the state courts within its geographic jurisdiction).

### DISCUSSION

*The Rooker–Feldman Doctrine bars this action unless an "Independent Claim" is pleaded*

▪ The *Rooker–Feldman* doctrine developed from two Supreme Court cases:

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is a recognition of the principle that federal district courts lack authority to exercise appellate review over state court judgments. *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726 (7th Cir.1993). State court litigants, therefore, cannot file collateral attacks on civil judgments in federal district courts but must instead seek review in the state appellate process or in the U.S. Supreme Court. *Id.* at 727. Because the doctrine affects subject matter jurisdiction, *Rooker–Feldman* can be raised at any time, by either party, or sua sponte by the court. *Ritter v. Ross*, 992 F.2d 750 (7th Cir.1993), *cert. denied*, 510 U.S. 1046, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994). The *Rooker–Feldman* doctrine only applies to individuals that were parties to the state court proceeding; nonparties to the state court action cannot be bound unless they are in privity with a party to the State Court action. *In re Richard Haskell*, 1998 WL 809520 at *4.

▪ Analysis of the applicability of the *Rooker–Feldman* doctrine requires determination whether this Court is being requested, in essence, to review a final judgment of the state court. *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506 (7th Cir., 1996). That determination is made by asking whether the federal plaintiff seeks to set aside a state court judgment or is in fact presenting an independent claim. *Id.* (*Citing GASH*, 995 F.2d at 726). If the injury alleged resulted from the state court judgment itself, the *Rooker–Feldman* doctrine dictates that the federal court lacks subject matter jurisdiction. *Id.* The doctrine applies even if the state

court judgment might be erroneous or unconstitutional. *Id.*

It is important to note that the pleaded claims in the federal court and state court need not be identical for the doctrine to apply. *Id.* Impermissible appellate type review is barred not only as to claims actually pleaded but also as to claims not pleaded that are inextricably intertwined with the state court judgment. *Id.* The Seventh Circuit has noted that "any definition of 'inextricably intertwined' is problematic," *Wright v. Tackett,* 39 F.3d 155 (7th Cir.1994), cert. denied, 513 U.S. 1150, 115 S.Ct. 1100, 130 L.Ed.2d 1067 (1995), and there is no bright line that separates federal claims that are intertwined with state court judgments from those that are not, *Ritter,* 992 F.2d at 754.

The *Rooker–Feldman* doctrine is sometimes equated with *res judicata.* Although both principles define the respect one court owes to an earlier judgment, the terms are not coterminous. *GASH,* 995 F.2d at 728. The *Rooker–Feldman* doctrine asks whether the federal plaintiff is seeking to set aside a state judgment. *Id.* If the answer is yes, then the district court lacks jurisdiction. *Id.* If the plaintiff presents some independent claim, "albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party," then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion. *Id.* Because it is jurisdictional, the applicability of the *Rooker–Feldman* doctrine ends the litigation in federal court and that court has no authority to address affirmative defenses, including *res judicata. Centres Inc. v. Town of Brookfield,* 148 F.3d 699 (7th Cir.1998). The doctrine's applicability must be determined before considering *res judicata.* A Seventh Circuit opinion has stated that if a federal plaintiff was the plaintiff in the state court action, the applicable doctrine is *res judicata,* not *Rooker–Feldman. Kamilewicz,* 92 F.3d at 509. By contrast, if the federal plaintiff was the defendant in state court, *Rooker–Feldman* is the applicable doctrine. *Id.* Usually the federal plaintiff's position in the state court proceeding will "coalesce with the source-of-the-injury standard," but it may not always do so. *Id.* The important issue remaining is the source of the injury standard: Was the federal plaintiff injured by the state court judgment or by a prior injury at the hands of the defendant?

While the Trustee and the Debtor are not precisely the same party, for the purpose of *Rooker–Feldman,* it must still be asked whether they were in privity with respect to the Dissolution Proceeding. In *Raleigh v. Haskell,* 1998 WL 809520 (Bankr.N.D.Ill.1998), the bankruptcy judge's opinion noted:

> The *Rooker–Feldman* doctrine may apply to non parties when they occupy positions "functionally identical" to the parties. This identity of positions or interests involves the concept of privity which is applicable to the *Rooker–Feldman* doctrine as well as the doctrine of collateral estoppel. A nonparty is in privity with a party, when the party adequately represents the nonparty's legal interest in the first proceeding. It is the identity of interests that controls in determining privity, not the nominal identity of the parties. Therefore, the question is whether the Debtor's legal interests in the divorce proceeding were congruent with the Trustee's legal interest.

*In re Raleigh v. Haskell,* 1998 WL 809520, at *4 (Bankr.N.D.Ill.).

In *Raleigh,* the trustee sued the debtor's ex-wife to recover as fraudulent conveyances certain pre-petition transfers she received pursuant to a property settlement

agreement which was incorporated into a judgment of dissolution of marriage. The wife moved for summary judgment asserting that the *Rooker–Feldman* doctrine precluded the bankruptcy court from avoiding the state court judgment. In response to her argument, the opinion held:

> A trustee is not in privity with a debtor where a judgment was obtained as part of a collusive scheme on the part of the debtor to hinder, delay or defraud creditors. The trustee is charged with managing the assets of the debtor and protecting the rights of creditors. When neither the trustee nor the creditors are parties to the proceeding and there has been collusion or fraud on the part of the parties so as to defraud the creditors, the parties to the scheme are antagonistic to the trustee's interest, so that the trustee's interest is not represented. Accordingly, a trustee can not be bound by that judgment.

*Id.* at *5.

The *Haskell* trustee argued that he could not be in privity with the debtor because the divorce proceeding was completed before the debtor filed for bankruptcy and because the debtor and his ex-wife colluded to obtain their divorce in order to protect their assets from the claims of the debtor's creditors. Also, the state court judge was said to have been misled by the ex-wife's testimony and the parties' failure to disclose to that judge information regarding their respective assets and liabilities. The debtor apparently had millions of dollars of debts and liability pursuant to a personal guarantee resulting in a negative net worth as opposed to his wife's positive net worth. Based upon those facts, the bankruptcy judge concluded that the *Haskell* trustee and the debtor were not in privity and hence that the *Rooker–Feldman* doctrine did not prevent the trustee from maintaining an adversary action against the debtor's ex-wife asserting collusion.

In the instant proceeding, however, where a dissolution of marriage and property settlement occurred after the bankruptcy filing pursuant to the agreed modification of automatic stay, the Trustee and Debtor must be found in privity in absence of any specific allegations that the domestic relations judgment was obtained as part of a collusive scheme on the part of the debtor to hinder, delay or defraud creditors. Recognizing this, the Trustee does assert in the Complaint that he and the Debtor were not in privity since the judgment occurred as part of a "collusive scheme to hinder, delay or defraud creditors." Without further statements of fact, however, that bare allegation is conclusory and a mere restatement of the law.

In *Haskell,* the state court divorce judge was not fully advised of assets and liabilities of the parties. Evidently, the husband there had both millions of dollars of debts and a personal guarantee that were undisclosed in the state court proceeding. Nothing in the record here pleads anything similar.

According to the Trustee's brief, the March 15, 1999, court-ordered transfer of Marital Residence to Ann to allow refinancing and preservation of the marital asset from a foreclosure action was a "collusive transfer." (Trustee's Response to Defendant's Motion at page 11.) Without a more precise factual allegation in the Complaint, however, the heightened pleading standard for fraud under Fed.R.Civ.P. 9(b) [Rule 7009 Fed.R.Bankr.P.] was not met because there is no precise pleading concerning the alleged collusion. Indeed, Debtor and the Defendant have been estranged since 1996 when the Debtor ceased to live in the Marital Residence. There are no facts pleaded that would lend any substance to the collusion assertion, and certainly no pleading or implication

that the state court judge was part of any collusion.

The defendant relies on *Hanno v. TCF National Bank Illinois*, 254 B.R. 732 (Bankr.N.D.Ill.2000) in her assertion that the Trustee alleges no injury independent of the state judgment. In *Hanno*, the opinion concluded that the bankruptcy trustee failed to present any new evidence warranting relief from the prior determination. As a result, the adversary proceeding would not affect the amount of property in the bankruptcy estate or distribution of same to creditors because the evidence was based on events which took place after dismissal of Hanno's bankruptcy case.

Here, the Trustee essentially is seeking to undo the Circuit Court's confirmation of the transfer by restoring to the Debtor his divested interest in the Marital Residence. As in *Hanno*, evidence of an appraisal of the Marital Residence which took place well after the actual transfer is inapplicable because reasonable value was adjudged by the state court judge at the time of the transfer.

Ann maintains that the Trustee cannot collaterally attack the Circuit Court's April 18 Order by this Adversary proceeding. The Trustee expressly requests the Court to vacate the April 18 Order, but also asserts that his alleged injury is the result an independent claim. The issue thus presented is whether the Trustee's UFTA cause of action as pleaded states an "independent claim" under the *Rooker–Feldman* doctrine.

### The Present suit is not an Independent Claim

 This court would necessarily have to set aside the state court judgment to provide the relief sought by the trustee. The instant action is inextricably intertwined with the state court judgment because it seeks to overturn the transfer effected by that judgment. Although, the Trustee ostensibly argues that the valuation of the Marital Residence was erroneous, the only way he can win is if this court reverses the transfer ordered by the state court. However, this court is without jurisdiction to take up that issue, because this action is not independent of the state court judgment.

An example of an independent claim can be found in *Brooks v. Auto Sales & Service, Inc.*, No. IP 00–1467–CM/s, 2001 WL 686950, 2001 U.S. Dist. LEXIS 8059 (S.D.Ind.). In *Brooks*, the plaintiff had lost at trial in small claims court and had been ordered to pay $4,021.90 to defendant for breach of contract. Plaintiff then brought suit in federal court charging, *inter alia*, that the defendants had violated the Fair Debt Collection Practices Act (FDCPA). The defendants invoked *Rooker–Feldman* and averred that the federal court could not review the state court judgment. However, the district court rejected this argument and held that *Rooker–Feldman* did not apply because the alleged violation of the FDCPA occurred prior to the entry of the state court judgment. The court further held that the issue of whether the FDCPA was violated was independent of the breach of contract claim litigated in state court. The present case is readily distinguishable from *Brooks*. Here, the state court judgment caused the transfer that the Trustee seeks to avoid. The Trustee's cause of action arises not from the allegedly erroneous appraisal of the Marital Residence, which pre-dated the judgment, but from the judgment itself. Conversely, the conduct complained of in *Brooks*, and the concomitant legal issue, was unrelated to the state court judgment.

Instead of *Brooks*, the instant case is analogous to *Epps and Venable, III v. Creditnet, Inc.*, 320 F.3d 756 (7th Cir. 2003). In that case, judgement was entered against the plaintiffs in state court

for failure to make good on checks used to purchase automobiles, and the plaintiffs were ordered to pay treble damages under the state's check deception statute. *Id.* at 757–58. Plaintiffs then sued in federal court claiming that the damages were excessive under another state statute. *Id.* The Panel held that the federal action was barred under *Rooker–Feldman* because the plaintiffs were essentially asking the federal court to review and possibly reverse the state court judgment. *Id.* at 760–61. Likewise, the Trustee is essentially asking this court to review and reverse the Dissolution of Marriage judgment and determination as to Mark's equitable interest. Based upon the foregoing analysis, this court lacks jurisdiction to do that.

### CONCLUSIONS

For reasons set forth, the $11,000 found to constitute the Mark's equitable interest may be claimed by the Trustee. The case will survive to enable Trustee to recover that amount, which was found due by the State Court order from Ann to Mark, as the value of Mark's equitable interest. But by separate order all prayers for relief in excess of that amount will be stricken. Since the Trustee has had three chances to plead, it appears that he cannot surmount the problems identified here. Therefore, an order will enter *in limine* barring any evidence at trial offered to support the stricken prayers for relief.