CENTRES, INC. and Centres Ventures, Inc., Plaintiffs–Appellants,

v.

TOWN OF BROOKFIELD, WISCONSIN, Town of Brookfield Board of Supervisors, Keith Henderson, et al., Defendants–Appellees.

No. 97–2790.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1998.

Decided June 15, 1998.

Allen C. Schlinsog, Joseph S. Goode (argued), Kravit & Gass, Milwaukee, WI, for Plaintiff-Appellant.

Charles H. Bohl, Kathryn M. West (argued), Whyte, Hirschboeck & Dudek, Milwaukee, WI, for Defendants-Appellees.

Before CUMMINGS, RIPPLE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.

Centres, Inc. and Centres Ventures, Inc. ("Centres") brought this § 1983 action against the Town of Brookfield, Wisconsin, the Town of Brookfield Board of Supervisors, and individual supervisors Keith Henderson, Carol Johnson, Debbie Prunty and Joseph Schwartz. The complaint alleges that the defendants violated Centres' due process rights by arbitrarily, capriciously and unreasonably denying its application for a building permit for commercial property in the Town of Brookfield. Centres also brought a supplemental state claim for inverse condemnation. The district court dismissed the federal claims on the ground that the *Rooker–Feldman* doctrine applied. We cannot accept this basis for dismissal of the complaint, and we therefore reverse the district court's judgment. Nevertheless, because we conclude that Count I, Centres' federal allegation, does not state a claim upon which relief can be granted, we remand that count with instructions to dismiss. We remand the supplemental state claim to the district court for proceedings consistent with this opinion.

## I.

### BACKGROUND

#### A. Facts

In September 1994, Centres proposed to construct a Media Play retail store in Brook-

field, Wisconsin. In seeking approval for this construction, Centres addressed issues regarding the project, including concerns about traffic, raised by the Town's Architectural Control Committee and Plan Commission. Centres retained RSV Engineering, Inc., to study the proposed development's impact on traffic in the area. RSV analyzed the problem by studying such factors as current traffic patterns and the several commercial and residential buildings in the immediate area. Based on this study, RSV designed several improvements, including the addition of turn lanes, to absorb the expected impact of Centres' development.

The Plan Commission hired Ayres Associates to evaluate RSV's recommendations. Ayres concluded that the probable impact on traffic patterns did not prevent approval of Centres' building plan. However, in recommending that the Board of Supervisors approve Centres' proposal, the Plan Commission conditioned its ultimate approval on resolution of a storm water issue. After Centres resolved the storm water issue, the Plan Commission unanimously recommended approval to the Board of Supervisors.

However, the Board of Supervisors unanimously rejected Centres' plan. Supervisor Johnson believed that the development would adversely affect the safety of the roads. Supervisor Prunty identified a problem with the aesthetics of the proposed development and believed that the engineering firms had failed to address the effects of recent developments in the area. Also, Supervisor Henderson, who had voted in favor of the permit as a member of the Plan Commission, changed his vote.

On July 21, 1995, RSV wrote a letter to the defendants stating that its evaluation had considered the effects of the recent developments in the area. Centres also wrote letters to each of the supervisors detailing the history of the permit application. Centres requested that the Board reconsider its decision, but the Board summarily declined further review.

Centres then filed an action in state court seeking certiorari review of the Board's decision.[1] On February 5, 1996, the state court held that the Town's decision not to approve the plan was supported by the law and the record, and was not arbitrary and capricious. On April 18, 1996, Centres' motion for reconsideration was denied. Centres did not appeal in the Wisconsin state court system because it had lost its option to purchase the real estate upon which the store was to be built when the property owner refused to renew the option. Instead, Centres brought this action in federal court.

**B.  Proceedings in the District Court**

The district court dismissed the action on the basis of the *Rooker–Feldman* doctrine. In the district court's view, the cause of action stated in Centres' complaint essentially attacked the ruling of the state court because upholding Centres' claims effectively would have voided the state court ruling. Accordingly, the district court dismissed the action for want of jurisdiction.

**II.**

**DISCUSSION**

**A.**

The *Rooker–Feldman* doctrine is rooted in the two decisions of the Supreme Court of the United States that have given the doctrine its name. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The essence of the *Rooker–Feldman* doctrine is that the lower federal courts do not have the authority to review the judgments of the state courts even when a federal question is presented. The only federal court possessing such authority is the Supreme Court of the United States.[2] As our case law has stated often, "lower federal courts lack juris-

---

1.  Wisconsin law provides for state court review of the Board of Supervisor's decision. *See* Wis. Stat. § 59.694(10); *see also* note 9, *infra* (detailing the scope of certiorari review).

2.  *See* 28 U.S.C. § 1257(a) ("Final judgments ... rendered by the highest court of a State ... may be reviewed by the Supreme Court....").

diction to engage in appellate review of state-court determinations," *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir.1996) (internal quotation omitted) (citing cases), or to consider collateral attacks on state court civil judgments, absent congressional authorization,[3] *see GASH Associates v. Village of Rosemont*, 995 F.2d 726, 727 (7th Cir.1993). Litigants who believe that a state judicial proceeding has violated their constitutional rights must appeal that decision through their state courts and then to the Supreme Court.[4] See *Young v. Murphy*, 90 F.3d 1225, 1230 (7th Cir.1996).

Our case law also sets forth the basic analytical methodology to be employed in determining the applicability of the *Rooker–Feldman* doctrine: whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.[5] *See Garry*, 82 F.3d at 1365. If the injury alleged resulted from the state court judgment itself, the *Rooker–Feldman* doctrine dictates that the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous[6] or unconstitutional.[7] *See id.* at 1365–66. A decision by a state court, no matter how erroneous, is not itself a violation of the Constitution actionable in federal court. *See Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir.1995). By contrast, if the alleged injury is distinct from the state court judgment and not inextricably intertwined with it, the *Rooker–Feldman* doctrine does not apply, although the doctrines of claim and issue preclusion may be applicable. *See Garry*, 82 F.3d at 1365–66. The definition of "inextricably intertwined" may be problematic; however, the "crucial point is whether 'the district court is in essence being called upon to review the state-court decision.'" *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir.1993) (quoting *Feldman*, 460 U.S. at 483–84 n. 16, 103 S.Ct. 1303), *cert. denied*, 510 U.S. 1046, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994). Therefore, a federal claim alleging injury caused by a state court judgment must be distinguished from a federal claim alleging a prior injury that a state court failed to remedy. *See Garry*, 82 F.3d at 1366–67.

In defining the contours of the *Rooker–Feldman* doctrine, we have suggested a general guideline: If the federal plaintiff was the plaintiff in state court, he must contend with res judicata; if the federal plaintiff was the defendant in state court, he must contend with the *Rooker–Feldman* doctrine. *See id.* at 1367. As we stated in *Homola*:

A plaintiff who loses and tries again encounters the law of preclusion. The second complaint shows that the plaintiff wants to ignore rather than upset the judgment of the state tribunal. A *defendant* who has lost in state court and sues in federal court does not assert injury at the hands of his adversary; he asserts injury at the hands of the court, and the second suit therefore is an effort to obtain collateral review. It must be dismissed not on the basis of preclusion but for lack of jurisdiction.

---

3. Of course, federal district courts have limited authority to examine collaterally state judicial proceedings pursuant to habeas corpus review. *See* 28 U.S.C. § 2241. Therefore, an exception to the *Rooker–Feldman* doctrine exists only in the presence of congressional authorization of collateral review of state court judgments.

4. The applicability of the *Rooker–Feldman* doctrine to interlocutory decisions of state courts is an open question. *See Nowicki v. Cooper*, 56 F.3d 782, 784 (7th Cir.1995), *cert. denied*, 516 U.S. 1067, 116 S.Ct. 753, 133 L.Ed.2d 700 (1996); *Hoover v. Wagner*, 47 F.3d 845, 849 (7th Cir.1995); *Owens–Corning Fiberglas Corp. v. Moran*, 959 F.2d 634, 635 (7th Cir.1992).

5. The *Rooker–Feldman* doctrine does not apply to state administrative judgments. *See Van Harken v. City of Chicago*, 103 F.3d 1346, 1349 (7th Cir.), *cert. denied*, — U.S. —, 117 S.Ct. 1846, 137

L.Ed.2d 1049 (1997) (noting that "[i]f the *Rooker–Feldman* doctrine is to be extended to administrative judgments, it will have to be done by the Court that created it").

6. The *Rooker* Court held that, no matter how wrongful a state court decision may have been, a federal district court has no jurisdiction to reverse or modify it. *See* 263 U.S. at 415–16, 44 S.Ct. 149.

7. The *Feldman* Court held that federal district courts "do not have jurisdiction ... over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." 460 U.S. at 486, 103 S.Ct. 1303.

59 F.3d at 650 (emphasis in original). However, this rule of thumb is merely an aid to analysis, not the analysis itself. Its utility is limited by its exceptions. Indeed, both the *Rooker* and the *Feldman* plaintiffs were also plaintiffs in the state judicial proceeding. Therefore, when the earlier state court proceeding is in the nature of a declaratory judgment suit and when the losing plaintiff attempts to try again in federal court, the *Rooker–Feldman* doctrine may prevent federal court jurisdiction. *See Garry,* 82 F.3d at 1368. Injury due to a state court decision remains the essential touchstone in determining the applicability of the *Rooker–Feldman* doctrine.

▆▆▆ Because the *Rooker–Feldman* doctrine is jurisdictional in nature, its applicability ends the litigation in federal court and the court has no authority to address affirmative defenses, including res judicata. *See id.* at 1365. Therefore, as our colleague in the district court implicitly recognized, the applicability of *Rooker–Feldman* must be determined before considering res judicata. *See id.* If *Rooker–Feldman* applies, a res judicata claim must not be reached. *See Homola,* 59 F.3d at 650. The rule of thumb that we have just described helps, in most instances, in determining whether the *Rooker–Feldman* doctrine or preclusion principles are the appropriate approach to the problem at hand.[8]

Therefore, although the *Rooker–Feldman* doctrine and principles of preclusion may be easily confused with each other because they both define the respect one court owes to an earlier judgment, the two are not coextensive. *See GASH Assocs.,* 995 F.2d at 728. As noted in *GASH Associates,* the *Rooker–Feldman* doctrine asks: "[I]s the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party?" *Id.*

▆▆▆ When we turn to the present case, application of the principle that we have just described and its concomitant rule of thumb makes clear that the doctrine that Centres must overcome is res judicata, not *Rooker–Feldman.* Centres does not allege an injury from the state court judgment itself; rather, it challenges the actions of the defendants. Thus, Centres seeks to ignore the state court judgment rather than to have the federal court sit as an appellate court and overrule the state court determination. Therefore, *Rooker–Feldman* did not deprive the district court of jurisdiction.

## B.

▆▆▆ The district court dismissed this action on the ground that the *Rooker–Feldman* doctrine forbade the maintenance of such a suit in federal court. As we have explained in the first part of this opinion, we cannot accept that rationale. Nevertheless, we may affirm the judgment of that court on any ground supported by the record. *See, e.g., Taylor v. Canteen Corp.,* 69 F.3d 773, 784 (7th Cir.1995). Several other grounds were litigated in the district court and are now presented to us on appeal. We therefore shall examine whether any of these grounds permit resolution of these claims.

### 1.

Although, as we have noted in our earlier discussion, many cases in which the *Rooker–Feldman* doctrine is inapplicable do present a viable defense under claim or issue preclusion, the state of the present record does not make that path a prudent one for us to take at this juncture of the litigation. We therefore turn to the defendants' contention that

---

8. As this court noted in *Garry:*
   For in most cases, a plaintiff in state court will have alleged a cause of action based on an injury caused by the defendant; and though that plaintiff may not have gotten a remedy from the state judgment (hence the subsequent federal action), the federal injury alleged is really distinct from the state court decision. Thus res judicata, but not *Rooker–Feldman,* may be applicable. On the other hand, the typical federal claim of a party who was previously a defendant in state court is one alleging injury due more to the 'wrongful' state judgment than to any particular act of the opposing party. Thus *Rooker–Feldman* forbids lower federal courts to accept jurisdiction over the case; and the res judicata claim is not even reached. 82 F.3d at 1367–68 (footnote omitted).

the federal count in Centres' complaint does not state a claim upon which relief can be granted.

■ Count I of the complaint alleges that the defendants have deprived Centres of a property interest by their arbitrary and capricious conduct in denying Centres a building permit. This allegation, as Centres notes in its complaint, is based on a substantive due process theory. The case law of this circuit makes clear that, in order to state a substantive due process claim, a plaintiff must also allege that some other substantive constitutional right has been violated or that state remedies are inadequate. *See New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1481 (7th Cir.1990); *Polenz v. Parrott*, 883 F.2d 551, 558–59 (7th Cir.1989); *Kauth v. Hartford Ins. Co.*, 852 F.2d 951, 958 (7th Cir.1988). As these cases acknowledge, these requirements impose substantial burdens on the plaintiff, but those burdens are appropriate. Federal courts "are not zoning boards of appeal." *Polenz*, 883 F.2d at 558.

■ Here, Centres has not alleged a violation of a substantive constitutional right other than the denial of its building permit application. Its allegation that the defendants acted contrary to state law and in an arbitrary and capricious manner does not supply the essential element of a separate constitutional violation. *See Hartland Sportsman's Club, Inc. v. Town of Delafield*, 35 F.3d 1198, 1202 (7th Cir.1994). Nor has Centres alleged that state law remedies are inadequate. Indeed, such an allegation would be groundless. In this very case, the state court addressed directly the gravamen of Centres' complaint and held that the defendants' decision was neither arbitrary nor unreasonable.[9] Although Centres decided not to avail itself of its right to appeal because its option had expired, we do not believe that this limitation, imposed not by the lack of state remedies but by the terms of the private option agreement, renders the state remedial scheme inadequate. Accordingly, Count I, the federal law based claim of Centres' complaint, must be dismissed for failure to state a claim.

## 2.

Count II of Centres' complaint alleges a claim for inverse condemnation. Although the complaint states no basis for the district court's jurisdiction over the claim and no statutory basis for the substantive claim, Centres' appellate brief does state that the claim is made under state law and that the jurisdiction of the district court is invoked under the supplemental jurisdiction statute. *See* 28 U.S.C. § 1367.

■ Because the federal claim has now been dismissed, it must be determined whether jurisdiction ought to be retained over this supplemental claim or whether Centres ought to be required to litigate the matter in state court. *See* 28 U.S.C. § 1367(c)(3). In determining whether to adjudicate such a claim, a federal court must choose the course that "'best serves the principles of economy, convenience, fairness and comity which underlie the pendent jurisdiction doctrine.'" *City of Chicago v. International College of Surgeons*, —— U.S. ——; ——, 118 S.Ct. 523, 533, 139 L.Ed.2d 525 (1997) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). For instance, our own case law has emphasized that considerations of judicial economy counsel that jurisdiction be retained when the appropriate disposition of the state claim is clear. *See Rothman v. Emory Univ.*, 123 F.3d 446, 454 (7th Cir. 1997); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir.1993). On the other hand, cases involving difficult and unresolved issues of state law or matters of local practice may well be adjudicated more accurately and more expeditiously in a state court.

■ We believe that this supplemental state claim ought to be returned to the dis-

9. In examining administrative action in a certiorari procedure, a Wisconsin court determines: (1) whether the Board acted within its jurisdiction and authority; (2) whether it proceeded on a correct theory of law; (3) whether the Board's action was arbitrary, oppressive or unreasonable; and (4) whether the evidence reasonably supports the determination of the Board. *See Ledger v. City of Waupaca Bd. of Appeals*, 146 Wis.2d 256, 430 N.W.2d 370, 371–72 (1988).

trict court for disposition. Although the inverse condemnation claim obviously presents many of the same issues as the federal substantive due process claim, our study of the parties' briefs convinces us that the claim also involves issues that have been presented to us in rather cursory fashion and upon which the district court has never ruled.[10] The defendants have also presented several affirmative defenses to this claim. The district court will need to assess whether it can easily adjudicate these defenses on the present record or whether additional proceedings, perhaps including additional fact-finding, are necessary.[11]

Accordingly, although we can dispose of the federal claim at this point, we believe that the district court ought to deal further with the state claim. The case will be remanded for that purpose.

### Conclusion

The judgment of the district court is reversed. The case is remanded to the district court with instructions to dismiss Count I for failure to state a claim upon which relief can be granted and to conduct further proceedings with respect to Count II that are consistent with this opinion. The appellees may recover the costs of this appeal.

REVERSED AND REMANDED WITH INSTRUCTIONS.

---

**10.** For example, it is not clear whether Wisconsin would consider Centres to have possessed an actionable property interest at the time of the alleged taking.

**11.** For instance, the defendants have raised the defense of claim preclusion. When Centres sought redress from the action of the Board through the state certiorari procedure, it failed to join to that claim any additional claim for inverse condemnation. Like most American jurisdictions, Wisconsin follows the so-called "same transaction" approach to claim preclusion and requires that a litigant bring all claims arising out of the same transaction at one time. Failure to do so precludes the same litigant from bringing another claim involving the same transaction at a later date. Centres' failure to bring an inverse condemnation action in state court at the time it brought the certiorari proceeding challenging the action of the Board may preclude it from now bringing such an action in this litigation. Even if we assume, arguendo, that the certiorari action would not bar subsequent litigation because of the expiration of the option prior to the appeal, such an impediment does not seem to exist with respect to a state cause of action for inverse condemnation. Centres claims that it ought not be subject to this bar because of the filing requirements unique to each of these claims. Whether these requirements really ought to excuse Centres from not having brought the inverse condemnation action at the time it brought the certiorari proceeding appears to be a question rooted in local practice, and its existence may convince the district court that the matter ought to be adjudicated in state court.