In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2082

BETH-EL ALL NATIONS CHURCH and
BISHOP EDGAR JACKSON,

*Plaintiffs-Appellees,*

*v.*

CITY OF CHICAGO,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 1111—**Samuel Der-Yeghiayan**, *Judge.*

ARGUED FEBRUARY 7, 2007—DECIDED MAY 14, 2007

Before FLAUM, ROVNER, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* An employee of the City of
Chicago mistakenly addressed a notice to Beth-El All
Nations Church at 1534 *East* 63rd Street, instead of Beth-
El's true address, 1534 *West* 63rd Street. The notice was
pretty important: it advised the Church of its right to
redeem title to the 63rd Street property after the parcel
was sold for delinquent taxes. Despite the misaddressed
notice, the City acquired a tax deed to the 63rd Street
property in 1998. Finally, after Beth-El's failed attempts
to challenge the tax deed through state postjudgment
proceedings, the City sought to oust Beth-El from the
property in 2006. On the very day in March 2006 when the

City came to take the property, Beth-El turned to federal court and filed a complaint claiming violations of the Fourth Amendment. It also sought a temporary restraining order, which the district court granted after an ex parte hearing. The Church then amended its complaint to state a procedural due-process claim and moved for a preliminary injunction. The City opposed the injunction, claiming that the district court lacked subject-matter jurisdiction over the suit under the *Rooker-Feldman* doctrine; according to the City, the Church had already litigated the property dispute in state court. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923). After an evidentiary hearing, the district court granted the preliminary injunction, reasoning that *Rooker-Feldman* was inapplicable because the Church never had an opportunity to challenge the City's acquisition of the tax deed in state court. The City now appeals.

Beth-El, an African-American church in the Chicago neighborhood of Englewood, took title to the 63rd Street property in 1976. Beth-El rehabilitated the property and began operating there in 1984. The Church was not, however, deemed to be tax-exempt during the period from 1986 to 1995, and so real estate taxes, totaling over $100,000, were assessed by Cook County against the property. Because of the delinquent taxes, the property was sold at a "scavenger sale," a sale authorized by Illinois law for properties that have been tax delinquent for more than two years, if annual forfeiture sales have not satisfied the delinquency. *See* 35 ILL. COMP. STAT. 200/21-145, 200/21-260 (2000); *see also People v. Meyers*, 630 N.E.2d 811, 819 (Ill. 1994) (noting primary purpose of scavenger sales is to return tax-delinquent property to the tax rolls). Under the rules governing these sales, Cook County itself could acquire the property if no private purchaser bid the full amount of the unpaid taxes. *See* 35

ILL. COMP. STAT. 200/21-260(g). Apparently no purchaser bid the full amount of the taxes here because Cook County acquired a certificate of purchase to Beth-El's property on August 7, 1997, which was confirmed by the Circuit Court of Cook County about a month later.

Cook County did not own the property yet, though. The certificate of purchase gave it the right to, among other things, assign the certificate of purchase "to any party, including taxing districts." *See* 35 ILL. COMP. STAT. 200/21-90. The City of Chicago happens to be a "taxing district," so Cook County assigned the certificate of purchase to it as part of the City's "Tax Reactivation Program," which, as its name suggests, attempts to reintroduce chronically tax-delinquent property to the tax rolls.

With the certificate in hand, the City's next step was to obtain a tax deed by filing a petition in the circuit court, which the City did in January 1998. But before a tax deed issues, the owner whose taxes are delinquent is entitled to notice of the right to redeem the property by paying the full amount of taxes and penalties. *See* 35 ILL. COMP. STAT. 200/21-260(f); *Meyers*, 630 N.E.2d at 819. And this is where the mistake happened: when the City addressed the notice, required by § 22-10 of the Illinois Property Tax Code, *see* 35 ILL. COMP. STAT. 200/22-10, it used the wrong address. The City was relying on a document from the Chicago Title Insurance Company, which was also apparently incorrect. At the City's request, Chicago Title performed a tract index search on property described by the City by pin number. The search revealed that the last recorded conveyance of the property was to "Beythel Outcast Church" (a name Beth-El All Nations Church formerly used), and referred to the address as "1534 E. 63rd St. Chicago, Illinois."

There were two other notices that the Tax Code requires, one under § 22-5, and one under § 22-15. *See* 35 ILL. COMP.

STAT. 200/22-5, 200/22-15. The former requires the purchaser, within four months and 15 days following a tax sale, to deliver to the county clerk a notice of the tax sale addressed to the party in whose name taxes were last assessed. *See* 35 ILL. COMP. STAT. 200/22-5. Section 22-15 requires a purchaser to publish notice of the tax sale in the newspaper. The City complied with the former section by delivering to the county clerk a notice that, this time, was properly address to Beth-El at 1534 W. 63rd Street. The City also published notice of the sale and redemption period—with the correct address on West 63rd Street—in the Chicago Daily Law Bulletin.

After the City filed its petition for a tax deed, and the redemption period expired, the City filed an "Application for an Order Directing the County Clerk to Issue a Tax Deed." The application recites that the required notices—under §§ 22-5, 22-10, and 22-15—had been served, and the City's counsel represented orally to the circuit court that all required notices had been served. Based on these representations, on July 7, 1998, the circuit court ordered the county clerk to issue the City a tax deed (the "tax-deed judgment"). The county clerk issued the City's tax deed that day, and the City recorded it seven months later.

The next thing we know for sure is that five years after taking title to the property the City filed an application in the Circuit Court of Cook County seeking actual possession of the property. Nine days later Beth-El, through counsel, moved to vacate the tax-deed judgment by filing a petition under § 2-1401 of the Illinois Code of Civil Procedure, 735 ILL. COMP. STAT. 5/2-1401. The petition alleged, among other things, that the City fraudulently concealed the 1998 proceedings by sending the § 22-10 notice of the right of redemption to Beth-El at the wrong address. As for the notice required by § 22-5, counsel for the Church told the circuit court that he had "no argument

there" and conceded that someone walked the correctly addressed notice to the county clerk's office. But still the Church claimed that under § 22-45(3) of the Tax Code, 35 ILL. COMP. STAT. 200/22-45, the judgment awarding the City a tax deed should be set aside because "the tax deed had been procured by fraud or deception." Attached to the petition was an affidavit from Bishop Edgar Jackson, a pastor at Beth-El since 1995, who attested that the Church has never been located at 1534 East 63d Street, and that he was always under the impression that the Church was tax exempt.

The City moved to dismiss Beth-El's petition under § 2-619.1, 735 ILL. COMP. STAT. 5/2-619.1, arguing that the petition was filed outside § 2-1401's two-year statute of limitations. *See* § 2-1401(c). Moreover, argued the City, what Beth-El alleged did not amount to fraudulent concealment. At the outset of the hearing on the cross-motions, Beth-El's counsel stated that he would like to "reserve, if possible" an argument that taxes should never have been assessed against the Church because it was tax exempt. He then stated: "I'm not asking this Court to hold this case up because that can be brought at any time. That would make it absolutely void because there would be no jurisdiction." But then, puzzlingly, counsel focused on his argument that the tax deed was void because the tax sale had been fraudulently concealed. (Counsel undoubtedly meant that he wanted to "*pre*serve" the issue of tax exemption, rather than *re*serve it—but he never actually made the argument in order to preserve it.)

The circuit court ultimately held that the City's mistake in addressing the § 22-10 notice did not amount to fraudulent concealment of the tax sale. Thus, the court continued, Beth-El provided nothing to circumvent the two-year statute of limitations for actions under § 2-1401, and the motion to dismiss had to be granted. The court

denied a petition for rehearing. The Appellate Court of Illinois affirmed, *City of Chi. v. Beth-El All Nations Church of God in Christ*, No. 1-04-0364 (Ill. App. Ct. Mar. 31, 2005) (unpublished order), and the Supreme Court of Illinois denied leave to appeal, *City of Chi. v. Beth-El All Nations Church of God in Christ*, 839 N.E.2d 1024 (Ill. 2005) (unpublished order).

Once the mandate issued, the City renewed its application for possession of the property, which was pending during the § 2-1401 proceedings. The circuit court held a hearing on the application in early January 2006, at which Beth-El agreed to an order granting possession to the City, provided that the order be stayed until February 28, 2006. On March 1, 2006, when a City employee came to put new locks on the property pursuant to the agreement transferring possession, he was asked by Bishop Jackson (by telephone) if the Church could have just one more day. After discussing the matter with counsel for the City, the employee agreed and left.

Bishop Jackson spoke with the employee by phone because at that very moment he was filing this lawsuit, and a motion for a temporary restraining order, in the federal district court. The 57-page pro se complaint named various parties, including the City, the mayor, and the state-court judge who issued the tax deed and decided the § 2-1401 petition (they were the same). The Church claimed violations of the Fourth Amendment for "unreasonable search and seizure" of the Church's property. The district court held a hearing, but the City attorneys did not learn of the suit in time to appear, so based on Bishop Jackson's representations the court entered a TRO and enjoined the named defendants from attempting to evict Beth-El. The City subsequently moved to dismiss the case and to vacate the TRO primarily on grounds that the suit was barred by the *Rooker-Feldman* doctrine and the Tax Injunction Act, 28 U.S.C. § 1341. The

district court denied the motion. During all this, Beth-El filed a motion for a preliminary injunction, which the court was scheduled to hear on March 13, 2006.

On that date, both parties appeared with counsel. The Church's counsel stated that the Church would file an amended complaint raising claims under 42 U.S.C. § 1983 for violations of the First Amendment and the Due Process Clause of the United States Constitution, as well as under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc to 2000cc-5 ("RLUIPA"), and the Illinois Religious Freedom Restoration Act, 775 ILL. COMP. STAT. 35/15 ("IRFRA"). The City again argued that the district court lacked subject-matter jurisdiction to entertain the lawsuit, but the district court put jurisdictional considerations to one side and told the City to "present your side why preliminary injunction factors shouldn't apply." The City then shoehorned its jurisdictional argument into the likelihood-of-success-on-the-merits prong for issuing injunctions, arguing that under *Rooker-Feldman* lower federal district courts lack subject-matter jurisdiction to overturn state-court judgments. The Church, relying on cases like *Taylor v. Fed. Nat'l Mortgage Assoc.*, 374 F.3d 529, 534 (7th Cir. 2004), replied that this case fits into one of the exceptions to *Rooker-Feldman*, namely, that if a plaintiff in federal court did not have a "reasonable opportunity" to raise its claims in state-court proceedings, the doctrine does not apply and a district court has jurisdiction to consider the case.

The Church's sole witness at the hearing was Bishop Jackson, who testified that Beth-El had never paid property taxes while it occupied the property. Bishop Jackson explained that Beth-El had never received a tax bill, and he believed he was the person who would have received one. Bishop Jackson further testified that he did not discover that the property had been sold until, at the earliest, late in 2001.

Mark Davis, an attorney who handled the acquisition of the tax deed, was the principal witness on the City's behalf. According to Davis, the City sent the Church several letters in the years following the tax sale encouraging it to obtain a tax exemption for the property. For example, in a letter dated September 20, 1999, an attorney representing the City, Marguerite Quinn, advised Bishop Jackson that the City had taken title to the property in a tax proceeding. Quinn encouraged the Bishop to consult an attorney. Receiving no response, Quinn wrote again to Bishop Jackson three months later, encouraging him to obtain legal representation and advising him that if the City received no response it may be forced to evict Beth-El. In February 2000 Quinn received a letter from Bishop James Baker, Presiding Regional Bishop of the Church of God in Christ United (which, according to Bishop Jackson, is Beth-El's "canopy international organization"), advising the City of a partial exemption for the Church's property (which, ironically, Bishop Baker identifies by that nasty address: 1638 *East* 63rd Street). Bishop Baker attached an exemption certificate from the Illinois Department of Revenue dated July 1, 1999, which provides that the Church's parcel is tax exempt, except for a resale shop on the first floor and meeting rooms on the second floor. The certificate was procured by Beth-El having filed an application for the exemption on March 26, 1998, just two months before the redemption period was set to expire. The application is attached to the Church's complaint, and it is signed by Bishop Jackson. (The application also identifies the property as "1534 E. 63rd Street"; apparently no one could keep the address straight.) Bishop Baker's letter to Quinn says that the partial exemption should have been a full exemption because all the operations on the property related to activities of the Church. He advised that Bishop Jackson was planning to retain a law firm to apply for a retroactive full exemption. But

according to Davis, the City heard nothing from the Church for the next two years. So the City sent two more letters, one in May 2002, and one in April 2003, advising the Church yet again that the City owned the property, and that Beth-El should obtain counsel to pursue a tax exemption.

On the last day of testimony, after the City presented its witnesses, Bishop Jackson took the stand again as a rebuttal witness. He denied seeing any of the letters the City produced. He testified that, despite his signature appearing on the application, he did not know who applied for the partial exemption granted by the Illinois Department of Revenue or what Bishop Baker had written to Quinn. He also testified for the first time about his interactions with a man named Charles Bowen, a mayoral assistant who acts as a liaison to community churches. According to Bishop Jackson, he believed the City would return the title even after it was acquired because Bowen assured him that it would be done.

The district court concluded that it had subject-matter jurisdiction because the misaddressed notice deprived Beth-El of a reasonable opportunity to have its claims heard in state court. Therefore, continued the court, neither *Rooker-Feldman* nor the Tax Injunction Act barred this suit in federal court. The court then ruled that "the likelihood of success on the merits factor favors the Church," but the court did not identify under what theory the Church was likely to prevail or why. The court also reasoned that the two-year statute of limitations for claims under 42 U.S.C. § 1983 did not apply in light of Bowen's representations to the Church that the City would return the deed. Finally, the court concluded that the balance of harms and public interest favored Beth-El. "In this country," the court concluded, "even a church is entitled to its day in court. That did not happen in this case." The court then entered a preliminary injunction enjoining the

defendants and their agents from "exercising any owner-ship or property rights, including any eviction attempts, over the property located at 1534 W. 63rd Street [Ah, the address was correct!] Chicago, Illinois."

On appeal, the City renews its arguments that the Tax Injunction Act and *Rooker-Feldman* deprived the district court of jurisdiction over this case. Because federal courts must determine that they have jurisdiction before pro-ceeding to the merits, *see Lance v. Coffman*, 127 S.Ct. 1194, 1196 (2007), we begin, as the district court did, with the *Rooker-Feldman* doctrine. (Whether we address *Rooker-Feldman* or the Tax Injunction Act first matters not because either one, if applicable, would bar this case in federal court. *See Crestview Vill. Apartments v. U.S. Dep't. of Hous. and Urban Dev.*, 383 F.3d 552, 557 (7th Cir. 2004) (*Rooker-Feldman* is jurisdictional); *Platteville Area Apartment Ass'n v. City of Platteville*, 179 F.3d 574, 582 (7th Cir. 1999) (Tax Injunction Act is jurisdictional).)

The City begins by arguing that *Rooker-Feldman* ap-plies because Beth-El seeks directly to overturn a state-court judgment. Beth-El's response is that the district court correctly refused to apply *Rooker-Feldman* because the Church lacked a reasonable opportunity to challenge the state-court judgment. Under the *Rooker-Feldman* doc-trine, lower federal courts lack subject-matter jurisdic-tion when, after state proceedings have ended, a losing party in state court files suit in federal court complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In determining whether a federal plaintiff seeks review of a state-court judgment, we ask whether the injury alleged resulted from the state-court judgment itself. *See Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 701-02 (7th Cir. 1998). If it does, *Rooker-Feldm-*

*an* bars the claim. *Id.* at 702. If the injury is independent of the state-court judgment, or if the federal claim alleges "a prior injury that a state court failed to remedy," *Rooker-Feldman* is no barrier to the federal suit. *Id. Rooker-Feldman* also applies to bar federal claims that are "inextricably intertwined" with a state-court judgment, except where the plaintiff lacked a reasonable opportunity to present those claims in state court. *See Taylor*, 374 F.3d at 534-35; *Brokaw v. Weaver*, 305 F.3d 660, 668 (7th Cir. 2002); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 556-57 (7th Cir. 1999).

In this case, the Church has sought all along to retain possession and regain title to the property. Beth-El has never identified any injury separate from the tax deed judgment; it has not alleged, for example, that the City's very act of misaddressing the notice violated a state or federal statute, *cf. Long*, 182 F.3d at 556 (holding *Rooker-Feldman* inapplicable to claim that defendants violated Fair Debt Collection Practices Act by sending fraudulent notice of overdue rent even though notice ultimately led to eviction order because sending of fraudulent notice itself was an injury independent of eviction order). Thus, Beth-El's injury was caused by—and its federal due-process claim arises directly out of—the tax deed judgment. *See Holt v. Lake County Bd. of Cmm'rs*, 408 F.3d 335, 336 (7th Cir. 2005); *Ritter v. Ross*, 992 F.2d 750, 754-55 (7th Cir. 1993). But when Beth-El argues that it lacked a reasonable opportunity to be heard in state court, it also challenges the § 2-1401 proceeding and the judgment that resulted from it. So what we have here is an attack on not one, but two state-court judgments. And, as Beth-El sees it, the interplay of these two state-court proceedings, by peculiarities specific to tax sale proceedings, deprived it of a reasonable opportunity to challenge to the tax sale.

In deciding whether Beth-El lacked a reasonable opportunity to present its claims in state court, we focus on

difficulties caused not by opposing parties, but by state-court rules or procedures. *See Taylor*, 374 F.3d at 534-35; *Long*, 182 F.3d at 558. In *Long*, for example, we held that *Rooker-Feldman* did not apply because the state court's forcible entry and detainer proceedings were so summary that they did not give the plaintiff a reasonable opportunity to contest an allegation of overdue rent. 182 F.3d at 559-60. Beth-El maintains that Illinois' post-judgment procedures for challenging tax-deed judgments are similarly limited because a petition to vacate a judgment must be brought within two years unless "*the ground for relief is fraudulently concealed*," 735 ILL. COMP. STAT. 5-2-1401 (emphasis added). According to the Church, the only way it could dodge dismissal under the statute of limitations was to show that the ground for relief was fraudulently concealed.

But there was another way. Void judgments may be attacked at any time. § 2-1401(f); *Sarkissian v. Chi. Bd. Of Ed.*, 776 N.E.2d 195, 201-02 (Ill. 2002). The Church acknowledged this principle in the state-court proceedings, but it now shifts its position to contend that there is no ground under Illinois law on which to argue that the tax-deed judgment was void. As the Church says, it could not argue that the misaddressed notice deprived the circuit court of jurisdiction and consequently voided the tax-deed judgment because the tax-deed proceeding requires only in rem jurisdiction, which the circuit court had. Although that appears to be a correct statement of Illinois law, *see e.g.*, *Zadik v. Pioneer Bank and Trust Co.*, 551 N.E.2d 343, 346 (Ill. App. Ct. 1990), it misses the point. Under Illinois law, a judgment approving a tax sale for tax-exempt property is void and may be attacked at any time. *See Emalfarb v. Krater*, 640 N.E.2d 325, 330 (Ill. App. Ct. 1994); *Standard Bank & Trust Co. v. Barnard*, 593 N.E.2d 538, 547 (Ill. App. Ct. 1991); *Novak v. Smith*, 554 N.E.2d 652, 655 (Ill. App. Ct. 1990). The Church's

postjudgment counsel recognized this. In fact, the Church's underlying gripe about the tax sale (aside from lack of notice) stems from its belief that the property was tax exempt. If Beth-El had shown up at the prove up prior to the issuance of the tax deed, it would presumably have argued that a tax deed should not issue because the property sold was tax exempt.

But the Church has simply never made the argument; instead, this is the very argument that postjudgment counsel "reserved" because he recognized he could raise it at any time. When we asked at oral argument why this issue was not explored earlier, the Church's counsel informed us that an argument about tax exemption would have been fruitless because Beth-El did not own the property after 1998 and could not obtain a tax exemption for it. The Church followed up with a post-argument letter, citing the Illinois Department of Revenue's website for the proposition that, to qualify for a property-tax exemption, an organization must *own* the property and use it exclusively for religious purposes. For its part, the City contends that the test for tax exemption is "use, not ownership."

Illinois courts look to the Illinois constitution and the Illinois Property Tax Code to determine if a parcel is tax exempt. *See Swank v. Dep't of Rev.*, 785 N.E.2d 204, 208 (Ill. App. Ct. 2003); *In re Ward*, 724 N.E.2d 1, 3-4 (Ill. App. Ct. 2000). The Illinois constitution provides that the General Assembly may exempt from taxation property used exclusively for religious purposes. ILL. CONST., art. IX, § 6. Under the Tax Code, property that is used exclusively for "religious purposes" qualifies for exemption so long as it is not used with "a view to profit." 35 ILL. COMP. STAT. 200/15-40(a)(1). Thus, if the Church uses the property for religious purposes and without a view to profit, as it has always claimed that it does, the property would have qualified for a tax exemption both before and even

after the City bought it in 1998. That is to say, the Church could have—and should have—argued in the § 2-1401 proceeding that the tax-deed judgment was void because the property sold was tax exempt.

At least one virtually identical claim has been successful in an Illinois court. *See New Holy Temple Missionary Baptist v. Discount Inn, Inc.*, No. 1-05-3010, 2007 WL 438254, *4 (Ill. App. Ct. Feb. 9, 2007).[1] In *Discount Inn*, two parcels of land belonging to New Holy Temple Missionary Baptist Church were sold for delinquent taxes. One parcel housed New Holy Temple's church building, while the other was the church's parking lot. Both parcels were tax exempt from 1976 to 1998, but from 1999 through 2003 they were listed as taxable on Cook County's assessment rolls. After a forfeiture tax sale, the parking-lot parcel of the property was assigned to Discount Inn, who later applied for an order directing the county clerk to issue a tax deed. After a hearing, the circuit court issued the order. New Holy Temple filed a petition under § 2-1401 seeking to vacate the circuit court's order, and Discount Inn moved to dismiss the petition. The circuit court granted Discount Inn's motion, but the Appellate Court of Illinois reversed. According to the appellate court, New Holy Temple had a meritorious defense to the tax sale because the parking lot should have been exempt from taxation. As the appellate court found, "[t]he church presented uncontroverted evidence that the parking lot had been used solely and continuously for church purposes and without a view to profit."

Because Beth-El, like New Holy Temple, could have argued in the § 2-1401 proceeding that the property sold was tax exempt, the state-court system was not closed to the Church as it may have been to the plaintiff in *Long*,

---

[1]  Decided two days after we heard oral argument in this case.

a case we cited earlier. The Church has simply never pursued its right to a retroactive tax exemption. Whether it may do so now will be governed by Illinois' law on successive petitions under § 2-1401. The point here is that federal court is not the place for Beth-El to obtain the relief it seeks. *See Manley v. City of Chi.*, 236 F.3d 392, 397 (7th Cir. 2001) (stating that a plaintiff "cannot avoid *Rooker-Feldman* by simply not submitting his claim in state court"). Beth-El's claims under § 1983, RLUIPA, and IRFRA are all targeted to overturn the state-court judgments, and as such, they are barred by *Rooker-Feldman*. Accordingly, we VACATE the grant of the preliminary injunction and REMAND with instructions to dismiss this case for lack of subject-matter jurisdiction. No costs are awarded.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*